IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| JOHNNY THOMAS ORTIZ II; JIMMIE GREGORY ROGERS JR.; and WELDON MURPHY,<br><br>Plaintiffs,<br><br>v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS; ALAN HIRSCH, in his official capacity as Chair of the North Carolina State Board of Elections; JEFF CARMON III, in his official capacity as Secretary of the North Carolina State Board of Elections; STACY EGGERS IV, in his official capacity as Member of the North Carolina State Board of Elections; KEVIN N. LEWIS, in his official capacity as Member of the North Carolina State Board of Elections; SIOBHAN O'DUFFY MILLEN, in her official capacity as Member of the North Carolina State Board of Elections; and KAREN BRINSON BELL, in her official capacity as Executive Director of the North Carolina State Board of Elections,<br><br>Defendants. | Civil Action No.: 5:24-cv-420 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. The Justice for All Party of North Carolina ("JFA") timely complied with all requirements under state law to qualify as a new political party and place its candidates on North Carolina's November 5, 2024 general election ballot. Nevertheless, by a divided 3-2 vote, Defendant North Carolina State Board of Elections ("NCSBE") declined to certify JFA as a new political party. NCSBE cited no legal authority for its action. NCSBE claimed to be investigating

allegations of "fraud" with respect to JFA's petitions, but NCSBE conceded that JFA submitted more than enough valid signatures than required under state law.

2. Plaintiffs are voters and petition signers who supported JFA's effort to become a ballot-qualified party in 2024. Plaintiffs want to vote for JFA's nominee in the November 2024 general election. The NCSBE's failure to certify JFA as a new party makes it impossible for them to do so. Plaintiffs therefore bring this action against the NCSBE for the violation of their rights to cast their votes effectively, to speak and associate for political purposes, to grow and develop their political party, to petition, and of their right to due process, as guaranteed by the First and Fourteenth Amendments. Plaintiffs respectfully request that the Court declare the NCSBE's failure to certify JFA as a political party unconstitutional and enter an order directing the NCSBE to certify JFA and place its nominee on North Carolina's 2024 general election ballot.

## JURISCITION AND VENUE

3. This Court has subject matter jurisdiction over this case pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331, because Plaintiffs' claims arise under the First and Fourteenth Amendments to the United States Constitution.

4. This Court has personal jurisdiction over Defendants because the NCSBE is an agency of the State of North Carolina and conducts in business in North Carolina.

5. Venue is proper in this Court because a substantial part of the events giving rise to this action occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(1), (2).

6. This Court has authority to grant declaratory and injunctive relief under Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201, 2202.

## PARTIES

7. Plaintiff Johnny Thomas Ortiz II is a resident of Fayetteville, North Carolina and is registered to vote in Cumberland County, North Carolina.

8. Plaintiff Jimmie Gregory Rogers Jr. is a resident of Fayetteville, North Carolina and is registered to vote in Cumberland County, North Carolina.

9. Plaintiff Weldon Murphy is a resident of Fayetteville, North Carolina and is registered to vote in Cumberland County, North Carolina.

10. Defendant North Carolina State Board of Elections is an agency of the State of North Carolina charged with administering the election laws of the State, including the petitioning process by which a new political party is formed and qualifies to place its nominees on North Carolina's general election ballot. On July 16, 2024, a divided NCSBE voted on party lines not to certify JFA's petitions. NCSBE's office address is Dobbs Building, Third Floor, 430 N. Salisbury St., Raleigh, NC 27603-1362.

11. Defendant Alan Hirsch is the Chair of the NCSBE. Defendant Hirsch is a registered Democrat. Defendant Hirsch voted not to certify JFA at the time of the NCSBE's June 26, 2024 meeting and defer the decision until completion of an investigation. Defendant Hirsch voted not to certify JFA as a new political party at NCSBE's July 16, 2024 meeting. Defendant Hirsch is named as a defendant in his official capacity only. Defendant Hirsch's office address is Dobbs Building, Third Floor, 430 N. Salisbury St., Raleigh, NC 27603-1362.

12. Defendant Jeff Carmon III is the Secretary of the NCSBE. Defendant Carmon is a registered Democrat. Defendant Carmon voted not to certify at the time of the NCSBE's June 26, 2024 meeting and defer the decision until completion of an investigation. Defendant Carmon voted not to certify JFA as a new political party at NCSBE's July 16, 2024 meeting. Defendant

Carmon is named as a defendant in his official capacity only. Defendant Carmon's office address is Dobbs Building, Third Floor, 430 N. Salisbury St., Raleigh, NC 27603-1362.

13. Defendant Stacy Eggers IV is a member of the NCSBE. Defendant Eggers is a registered Republican. Defendant Eggers voted to certify JFA as a new political party at NCSBE's June 26 and July 16, 2024 meetings. Defendant Eggers is named as a defendant in his official capacity only. Defendant Eggers's office address is Dobbs Building, Third Floor, 430 N. Salisbury St., Raleigh, NC 27603-1362.

14. Defendant Kevin N. Lewis is a member of NCSBE. Defendant Lewis is a registered Republican. Defendant Lewis voted to certify JFA as a new political party at NCSBE's June 26 and July 16, 2024 meeting. Defendant Lewis is named as a defendant in his official capacity only. Defendant Lewis' office address is Dobbs Building, Third Floor, 430 N. Salisbury St., Raleigh, NC 27603-1362.

15. Defendant Siobhan O'Duffy Millen is a member of the NCSBE. Defendant Millen is a registered Democrat. Defendant Millen voted not to certify at the time of the NCSBE's June 26, 2024 meeting and defer the decision until completion of an investigation. Defendant Millen voted again not to certify JFA as a new political party at NCSBE's July 16, 2024 meeting. Defendant Millen is named as a defendant in her official capacity only. Defendant Millen's office address is Dobbs Building, Third Floor, 430 N. Salisbury St., Raleigh, NC 27603-1362.

16. Defendant Karen Brinson Bell is the Executive Director of the NCSBE. Defendant Brinson Bell is North Carolina's chief elections official. She leads the NCSBE, which is charged with administering elections and ensuring voting for North Carolina's more than 7 million voters. Defendant Brinson Bell is named as a defendant in her official capacity only. Defendant Brinson

4

Bell's office address is Dobbs Building, Third Floor, 430 N. Salisbury St., Raleigh, NC 27603-1362.

## FACTUAL ALLEGATIONS

### I. Relevant Provisions of the North Carolina Election Code

17. Under North Carolina law, a group of voters may form a new political party and qualify it to place its nominees on the general election ballot by submitting petitions "signed by registered and qualified voters in this State equal in number to one-quarter of one percent (0.25%) of the total number of voters who voted in the most recent general election for Governor." N.C. GEN. STAT. § 163-96(a)(2). The petitions "must be signed by at least 200 registered voters in each of three congressional districts in North Carolina." *Id*. The petitions must be submitted to NCSBE before noon on the first day of June of the election year in which the party seeks to participate. *See id*.

18. Voters who wish to form a new party pursuant to N.C. GEN. STAT. § 163-96 must first submit their petitions to the county board of elections in the county in which the signatures were obtained. N.C. GEN. STAT. § 163-96(c). The petitions must be submitted to the county boards of election no later than 5:00 PM on the fifteenth day preceding the date on which they must be filed with NCSBE under N.C. GEN. STAT. § 163-96(a)(2). *Id*. The chair of each county board of elections must examine the signatures, check them against voter registration records, and certify the number of signatures signed by voters who are qualified and registered to vote in the county. *Id*. Each county board of elections must complete this validation process and return the petitions to the person who submitted them within two weeks. *See id*.

19. When voters who seek to form a new party submit their validated petitions to NCSBE on June 1, NCSBE "shall forthwith determine the sufficiency of petitions filed with it and

5

Case 5:24-cv-00420-BO   Document 1   Filed 07/22/24   Page 5 of 18

shall immediately communicate its determination" to the state chair of the new party. N.C. GEN. STAT. § 163-96(a)(2).

20. A new party that qualifies under N.C. GEN. STAT. § 163-96 "shall be entitled to have the names of its candidates for national, State, congressional, and local offices printed on the official ballots…" in the first general election following the date on which it qualified, provided that the candidates pay the required filing fee or comply with an alternative procedure. N.C. GEN. STAT. § 163-98. The new party must select its candidates by party convention. *See id*. After the convention is adjourned, but not later than July 1, the convention president must certify to NCSBE the candidates that it nominated at the convention. *See id*. The candidates also must submit an application to change party affiliation to the new party at or before the time they are certified. *See id*.

## II. JFA Timely Complied With All State Law Requirements to Qualify as a New Political Party and Place Its Nominees on North Carolina's 2024 General Election Ballot

21. JFA conducted a petition drive pursuant to N.C. GEN. STAT. § 163-96 to qualify as a new party and place its nominees on North Carolina's 2024 general election ballot. The petition drive was conducted by party members and supporters and by voters who support Dr. Cornel West's campaign for President of the United States.

22. Under N.C. GEN. STAT. § 163-96(a)(2), JFA was required to submit petitions with 13,865 valid signatures. According to NCSBE, JFA timely submitted petitions containing a total of 30,719 signatures to county boards of elections, and the county boards of elections found that 17,362 of those signatures were checked and determined to be valid. *See Petition Search,* North Carolina State Board of Elections, https://vt.ncsbe.gov/PetLkup/PetitionResult/?CountyID=0&PetitionName=NEW%20PARTY%3A%20JUSTICE%20FOR%20ALL%20PARTY%20OF%20NC.

23. JFA's validated petitions were timely submitted to NCSBE, as required by § 163-96(a)(2).

24. After petitions are submitted to the NCSBE for review by June 1, § 163-96(a)(2) provides that NCSBE "shall forthwith determine the sufficiency of petitions filed with it and shall immediately communicate its determination to the State chair of the proposed new political party." The NCSBE must make this determination before July 1—the statutory deadline for new political parties to hold their nominating convention. N.C. GEN. STAT. § 163-98.

25. On or about June 21, 2024, NCSBE notified JFA that it would not consider whether to determine the sufficiency of JFA's petitions, as required by N.C. GEN. STAT. § 163-96(a)(2), until June 26, 2024. NCSBE also requested additional information from JFA in order to assist with its determination. Upon information and belief, JFA timely responded to NCSBE's request for additional information prior to the June 26, 2024 meeting. Because JFA was required to nominate its candidates at convention and certify them to NCSBE no later than July 1, 2024 (*see* N.C. GEN. STAT. § 163-98), this would leave JFA less than five days to hold a convention and certify its candidates after NCSBE made its determination.

26. On June 26, 2024, a divided NCSBE voted not to certify and to defer the decision on whether or not to certify JFA as a new political party to a later date, despite the fact that the county boards of elections had already validated 17,362 signatures – 3,497 more valid signatures than required under N.C. GEN. STAT. § 163-96(a)(2). The two Republican NCSBE members voted in favor of certification in light of the July 1, 2024 convention deadline for new political parties, but all three Democratic NCSBE members voted no and unilaterally agreed to defer the decision.

27. Despite the understanding that North Carolina law mandated a July 1 deadline, the NCSBE determined that it would revisit the issues at the next meeting, which was tentatively

7

scheduled for July 9, 2024, after conducting an "investigation." Notably, Mr. Eggers reminded Chairman Hirsch that courts had instructed NCSBE to stay within statutory deadlines, to which Chairman Hirsch responded that he felt "completely comfortable" that the NCSBE could waive the July 1 new party convention deadline and stated, "And if somebody wants to sue us about it, they can do that." *See* North Carolina State Board of Elections, June 26, 2024 Meeting ("June 26 Meeting"), at 1:59:00-2:00:25, publicly available at https://s3.amazonaws.com/dl.ncsbe.gov/State_Board_Meeting_Docs/2024-06-26/State%20Board%20of%20Elections%20Meeting-20240626%202000-1.mp4.

28. Upon information and belief, pursuant to N.C. GEN. STAT. § 163-98, JFA held its convention on June 28, 2024. The party duly selected Dr. Cornel West as its candidate for President of the United States.

29. Upon information and belief, Italo Medelius, the Chairman of JFA, certified Dr. Cornel West as JFA's candidate for President of the United States to NCSBE, as required by N.C. GEN. STAT. § 163-98. Dr. West also submitted a Notice of Candidacy form and check for his candidate filing fees to NCSBE. *See* N.C. GEN. STAT. § 163-98.

30. JFA and its candidates thus timely complied with all state law requirements to form a new party pursuant to N.C. GEN. STAT. § 163-96 and place its nominees on North Carolina's 2024 general election ballot pursuant to N.C. GEN. STAT. § 163-98.

### III. Democratic Party Operatives' Interference With JFA's Petition Drive

31. On June 5, 2024, the North Carolina Democratic Party wrote to NCSBE, objecting to JFA's petitions on the basis that JFA was trying to allow Dr. Cornel West to access the ballot without him having to run as an unaffiliated candidate.

32. On June 13, 2024, Clear Choice Action, by and through its attorneys Elias Law Group and Patterson Harkavy LLP, submitted correspondence to the NCSBE challenging the purpose and intent of JFA and alleges that the county boards of election improperly validated certain signatures on JFA's petitions.

33. On its website, Elias Law Group identifies itself as "the nation's largest law firm focused on representing the Democratic Party, Democratic campaigns, nonprofit organizations, and individuals committed to securing a progressive future." *See About*, Elias Law Group, https://www.elias.law/about.

34. Clear Choice Action was created by Democrats to limit the voices of North Carolina voters in order to protect and advance their own political agenda: "Allies of President Biden have formed a super PAC called Clear Choice, aimed at stopping any third-party or independent candidates from gaining traction before the November Election." Michael Scherer, *Biden allies form new group to coordinate attacks on third-party candidates*, Wash. Post (Mar. 14, 2024), https://www.washingtonpost.com/politics/2024/03/14/biden-third-party-super-pac/.

35. Clear Choice Action's website clearly identifies their "mission" as follows: "Clear Choice Action is dedicated to educating the public and protecting the constitutional rights of citizens, as well as upholding democratic institutions." *See* Clear Choice Action, available at https://www.clearchoiceaction.com/ (accessed June 30, 2024).

36. A review of the documents posted on the NCSBE's website regarding this matter indicates that the basis of the NCSBE's request for information from JFA on June 21, 2024 was based upon the allegations contained in the correspondences submitted by Democratic operatives. The meeting materials are available in the meeting folder located at:

https://www.ncsbe.gov/news/press-releases/2024/06/24/state-board-meeting-june-26-2024 ("June 26, 2024 Meeting Materials")

37. Upon information and belief, JFA provided all requested information in a timely manner, including, but not limited to all training materials and documentation related to the proposed political party's purpose and intent.

38. During the course of JFA's petition drives, tens of thousands of voters signed JFA's petitions, and JFA petition circulators spoke with tens of thousands more North Carolinians in addition to the petition signers. On information and belief, not one of those citizens filed a complaint with NCSBE or any county board of elections regarding JFA's petitioning efforts. On information and belief, only Clear Choice Action, represented by Elias Law Group, has filed such a complaint.

39. Plaintiffs are unaware of any effort by the NCSBE to investigate the Democratic operative's conduct.

### IV. A Divided NCSBE Voted on Party Lines Not to Certify JFA as a New Party Despite JFA's Compliance With All Applicable Requirements Under State Law

40. Despite the fact that the NCSBE received JFA's petitions by the June 1 statutory deadline, the NCSBE waited until June 21, 2024 to request information from JFA regarding its petition process. *See* June 26, 2024 Meeting Materials.

41. Upon information and belief, JFA responded to all of NCSBE's inquiries and provided all responsive documentation in advance of the June 26, 2024 meeting. *See id.*

#### A. June 26, 2024 NCSBE Meeting

42. The NCSBE convened its June 26, 2024 meeting at 4:00 PM. (*See* June 26 Meeting).

43. The discussion of JFA's petitions began with Chairman Hirsch attempting to place the Chair of JFA, Mr. Medelius, under oath and unilaterally stating that the Board was going to require him being under oath, despite the fact that the Chair of the Constitution Party was allowed to proceed without being under oath in the same meeting, and even stated "this is the chairman's prerogative." (*Id.* at 1:18:25 – 1:27:26). Ms. Millen and Mr. Carmon then stated that all persons testifying should be treated the same, and Chairman Hirsh eventually conceded to all the other members of the Board. (*Id.* at 1:22:50-1:24:05).

44. Prior to asking Mr. Medelius any substantive questions, Chairman Hirsh then requested that a video from Twitter/X, originally submitted by Clear Choice Action, be presented, wherein an alleged circulator by the name of Scott Presler stated that the alleged purpose of the petition was "to take away votes from Joe Biden." According to Chairman Hirsch, the Twitter video submitted by Clear Choice Action, represented by Elias Law Group, showed the real purpose and intent of JFA—not JFA's own submissions to NCSBE. (June 26 Meeting at 1:26:50 – 1:27:26). Evidently, after seeing a clip that was only seventeen seconds long, Chairman Hirsch felt that no other information could have been conveyed to convince him otherwise.

45. Mr. Carmon stated his reason for voting against certification: "The dilemma it creates for me, uh, for us is that these signatures are collected um – I don't want to say rogue because I don't know anything about the organization – but not in, um, alignment with what you all were doing." (*Id.* at 1:32:20 – 1:32:37). Mr. Carmon made this statement without investigating this alleged issue prior to the NCSBE meeting.

46. Ms. Millen clearly failed to prepare for the meeting, as demonstrated when she asked Mr. Medelius the following question: "As you gather signatures, are you contemplating a statewide ongoing political organization with distinctive character?" (*Id.* at 1:34:24 – 1:33:31). A

review of the documentation produced by JFA prior to the meeting would have answered that question.

47. At the end of the NCSBE meeting, Ms. Millen stated: "If this Board keeps rubberstamping thinly veiled so-called 'parties,' national operatives are going to continue to come in and try and manipulate our system. The new party statute and the unaffiliated candidate statute should be read as one coherent framework for getting on the ballot and allowing unaffiliated candidates to follow the more lenient new party rules by creating faux parties is turning a blind eye to partisan mischief." (*Id.* at 3:24:45 – 3:25:13). To imply that JFA is a "faux party" without having any basis for that assertion whatsoever is to slap thousands of Americans who disagree with the two-party system and who are looking for an alternative.

48. Mr. Eggers reminded his fellow board members that this was the same issue that they dealt with in *North Carolina Green Party v. North Carolina State Board of Elections*, 5:22-cv-00276-D-BM (E.D.N.C. 2022) where an injunction was granted against NCSBE. Mr. Eggers reminded NCSBE that they had a statutory obligation to certify "forthwith" so that new poltiical parties can hold their nominating conventions before the July 1 deadline in § 163-98.

49. Mr. Eggers and Mr. Lewis indicated that they did not understand why JFA would not be certified that day.

50. The NCSBE then voted on the certification of JFA as a political party. The two Republican NCSBE members voted in favor of certification, but all three Democratic NCSBE members voted against certification at that time, and agreed to take up the issue again once an investigation concluded. (June 26 Meeting at 1:58:36-2:11:10).

12

51. No NCSBE member voting against certification of the JFA petitions cited any legal authority to deny certification or made any findings of fact so that JFA could know how to cure the Board's concerns.

52. At no time prior to the June 26 Meeting, or during the meeting, did the NCSBE produce any evidence on which its own investigation into JFA's petitions thus far relied.

53. At the conclusion of the June 26 Meeting, when asked by Mr. Lewis if NCSBE would set a deadline to determine whether JFA (and two other parties) should be certified, NCSBE scheduled another meeting tentatively for July 9, 2024. (*Id.* at 3:35:28 – 3:38:10).

### B. July 9, 2024 NCSBE Meeting

54. NCSBE convened its July 9, 2024 meeting at 1:30 PM. *See* North Carolina State Board of Elections, July 9, 2024 Meeting ("July 9 Meeting"), publicly available video at: https://s3.amazonaws.com/dl.ncsbe.gov/State_Board_Meeting_Docs/2024-07-09/State%20Board%20of%20Elections%20Meeting-20240709%201730-1.mp4

55. NCSBE refused to certify JFA at the July 9 Meeting.

56. Mr. Eggers noted that the signature requirement was satisfied and that JFA (and another proposed political party) was well-above the signature threshold set by statute (July 9 Meeting at 40:01 – 40:13).

57. Mr. Lewis pointed out, "When the number of signatures is well above the statutory requirement, I just – this is not making a lot of sense to me….I'm a little bit disappointed and at a loss of how this Board is dragging its feet on this issue…." (*Id.* at 41:09 – 41:21; 41:55 – 42:03).

58. During the July 9 Meeting, it became apparent that the Democratic members had not reviewed responses to any of the subpoenas that they had issued, nor had they otherwise

prepared for the meeting. Chairman Hirsch specifically stated that they had not had a chance to review the information that was produced in response to subpoenas. (*Id.* at 42:12-42:35).

59. The Democratic board members relied upon NCSBE staff to call individuals and ask them about their signatures on the JFA petitions. Ms. Millen noted that there was "a pretty high proportion" of individuals who allegedly did not recall signing JFA's petitions and that "I would suggest it may not be a small number." (*Id.* at 44:20-44:47).

60. Mr. Eggers stated that "we typically don't undo any results unless something is outcome determinative, and I just don't want us on a fishing expedition." (*Id.* at 46:50 – 46:59).

### C. July 16, 2024 NCSBE Meeting

61. The NCSBE reconvened on July 16, 2024 at 10:30 AM to, *inter alia*, revisit the issue of certification of JFA. See North Carolina State Board of Elections, July 16, 2024 Meeting ("July 16 Meeting"), publicly available video at:

https://s3.amazonaws.com/dl.ncsbe.gov/State_Board_Meeting_Docs/2024-07-16/State%20Board%20of%20Elections%20Meeting-20240716.mp4.

62. During the July 16, 2024 meeting, the NCSBE explained that they had been conducting their own investigation of individuals who signed JFA's petitions. (July 16 Meeting at 30:30 – 32:33).

63. Chairman Hirsch explained that the NCSBE had subpoenaed individuals affiliated with People Over Party, an organization that had assisted with signature gathering, and stated that those individuals refused to comply with the subpoenas. (*Id.* at 34:03 – 35:09). Notably, a review of the documents posted by NCSBE related to the July 16, 2024 Board Meeting indicates that NCSBE did receive responses to the subpoenas, but that the individuals also asserted objections to the information sought. The meeting materials are available in the publicly available meeting

14

folder located at: https://dl.ncsbe.gov/?prefix=State_Board_Meeting_Docs/2024-07-16/ ("July 16, 2024 Meeting Materials").

64. Chairman Hirsch claimed that at least fifty percent (50%) of the signatures were likely to be "highly questionable" with the incorrect purpose and intent. (July 16 Meeting at 36:40 – 37:08).

65. However, staff from the NCSBE revealed that they attempted to contact a list of 250 individuals out of the approximately 17,362 signatories. Of the 250, they were able to reach 49 individuals. Of the 49 individuals, 18 said they did not sign the petition, and 3 said they did not recall. 28 acknowledged that they signed and were asked follow-up questions. The full documentation for the polling survey is publicly available here: https://s3.amazonaws.com/dl.ncsbe.gov/State_Board_Meeting_Docs/2024-07-16/New%20Party%20Petitions/SBE%20Inquiry/Summary%20Calls%20to%20JFA%20Signers%20at%20Random.pdf. This is hardly a representative sample.

66. Mr. Eggers stated that polling of such a small sample to wholly discredit an entire petition was unprecedented, and that he believed this to be a "fishing expedition" and that he did not believe that the threshold had been met to invalidate the signatures and not certify JFA. (July 16 Meeting at 38:40 – 39:26).

67. The NCSBE voted against certifying JFA at the July 16, 2024 meeting in a 3-2 vote.

68. Upon information and belief, NCSBE's decision not to certify JFA is final, and NCSBE will not be revisiting the issue of certification of JFA.

**NCSBE's Failure to Certify JFA as a New Party Injures Plaintiffs' Constitutional Rights**

69. The NCSBE's failure to certify JFA as a new party renders it unable to place its nominee on North Carolina's 2024 general election ballot. As a result, Plaintiffs and the other

15

registered voters who signed JFA's petitions, as validated by county boards of elections, will be denied their right to vote for JFA's candidates in the 2024 general election. Voters, including Plaintiffs, are also unable to register as JFA members. All of this harms Plaintiffs' core First Amendment rights as voters and citizens who wish to grow and develop a new political party in North Carolina.

70. The NCSBE's failure to certify JFA's petitions despite JFA's compliance with all applicable requirements under state law also harms Plaintiffs' due process rights, because NCSBE has not provided JFA with specific evidence that is sufficient to discredit the approximately 17,362 signatures already validated by the county boards of election or a true opportunity to defend the validity of such signatures.

71. Instead, the NCSBE used a non-representative polling sample to effectively invalidate JFA's petitions without the statutory authority to do so.

## CAUSES OF ACTION

### COUNT I
**(Violation of Plaintiffs' Rights Guaranteed by the First and Fourteenth Amendments)**

72. Plaintiffs reassert each preceding allegation as if set forth fully herein.

73. The NCSBE is required to determine the sufficiency of a new party's petitions "forthwith" and to notify the new party's chair of its determination "immediately." N.C. GEN. STAT. § 163-96(a)(2).

74. The NCSBE's failure to certify JFA as a new political party, despite JFA's compliance with all applicable requirements under state law, severely burdens Plaintiffs' First Amendment rights.

75. The NCSBE's failure to certify JFA as a new political party is not justified by any legitimate or compelling state interest.

76. The NCSBE's failure to certify JFA as a new political party causes injury to and violates their associational and substantive due process rights guaranteed to Plaintiffs by the First and Fourteenth Amendments to the United States Constitution.

## COUNT II
### (Violation of Plaintiffs' Procedural Due Process Rights Guaranteed by the Fourteenth Amendment)

77. Plaintiffs reassert each preceding allegation as if set forth fully herein.

78. The NCSBE is required to determine the sufficiency of a new party's petitions "forthwith" and to notify the new party's chair of its determination "immediately." N.C. GEN. STAT. § 163-96(a)(2).

79. The NCSBE's failure to certify JFA as a new political party, despite JFA's compliance with all applicable requirements under state law, without providing JFA with notice or an opportunity to cure or fully address the validity of the signatures on its petitions or the integrity of its petitioning process, violates Plaintiffs' right to due process of law.

80. The NCSBE's failure to certify JFA as a new political party causes injury to and violates procedural due process rights guaranteed to Plaintiffs by the Fourteenth Amendment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

A. Declare that the NCSBE's failure to certify JFA as a new political party is an unreasonable interpretation that is not justified by any legitimate or compelling state interest that severely burdens Plaintiffs' rights in violation the First and Fourteenth Amendments to the United States Constitution;

B. Enter an Order as soon as possible, but no later than August 19, 2024[1] that: (1) directs NCSBE to certify JFA as a new party entitled to place its candidates on North Carolina's November 5, 2024 general election ballot

---

[1] Plaintiffs calculated this date to allow for ballots to be printed ahead of the September 6, 2024 deadline by which absentee ballots must be available for voting. N.C. Gen. Stat. § 163-227.10. This date is subject to change depending on additional printing information from the NCSBE, and when the Democratic Party selects their candidates for President and Vice President.

pursuant to N.C. GEN. STAT. § 163-96(a)(2); (2) enjoins NCSBE from enforcing the July 1, 2024 deadline prescribed by N.C. GEN. STAT. § 163-98 against Plaintiffs; and (3) directs NCSBE to take any and all other action necessary to ensure the inclusion of JFA's candidates, including Dr. West, on North Carolina's November 5, 2024 general election ballot.

C. Award litigation costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

D. Retain jurisdiction over this action and grant Plaintiffs any further relief which may, in the discretion of the Court, be necessary and proper.

Respectfully submitted, this the 22nd day of July, 2024.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: /s/ Phillip J. Strach
Phillip J. Strach (NC Bar No. 29456)
Alyssa M. Riggins (NC Bar No. 52366)
Cassie A. Holt (NC Bar No. 56505)
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
phil.strach@nelsonmullins.com
alyssa.riggins@nelsonmullins.com
cassie.holt@nelsonmullins.com
Telephone: (919) 329-3800
Facsimile: (919) 329-3799

*Counsel for Plaintiffs*