IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-cv-00420-BO

| | |
|---|---|
| JOHNNY THOMAS ORTIZ II, JIMMIE GREGORGY ROGERS, JR. and WELDON MURPHY,<br><br>Plaintiffs,<br><br>v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS, ALAN HIRSCH, in his official capacity as Chair of the North Carolina State Board of Elections, JEFF CARMON III, in his official capacity as Member of the North Carolina State Board of Elections, STACY EGGERS IV, in his official capacity as Member of the North Carolina State Board of Elections, KEVIN N. LEWIS in his official capacity as Member of the North Carolina State Board of Elections, SIOBHAN O'DUFFY MILLEN in her official capacity as Member of the North Carolina State Board of Elections, and KAREN BRINSON BELL, in her official capacity as Executive Director of the North Carolina State Board of Elections,<br><br>Defendants. | **INTERVENOR-PLAINTIFFS' RESPONSE IN OPPOSITION TO STATE BOARD DEFENDANTS' MOTION TO DISMISS** |

Dr. Cornel West, Italo Medelius and the Justice for All Party of North Carolina ("JFA") (collectively, "Intervenor-Plaintiffs") respectfully submit this Response in Opposition to the Motion to Dismiss filed by Defendants North Carolina State Board of Elections ("the Board"), Alan Hirsch, Jeff Carmon, III, Siobhan Millen, Stacy Eggers, IV, Kevin Lewis and Karen Brinson Bell (collectively, "Defendants") on January 2, 2025 (D.E. 66, 67) ("Motion or "Mot."). As set forth below, dismissal is improper here because Intervenor-Plaintiffs are entitled to the declaratory

1

relief they requested in addition to the preliminary injunctive relief the Court previously granted.[1] Further, declaratory relief is necessary to prevent the Board from unconstitutionally enforcing N.C.G.S. § 163-98 against political parties it fails to timely certify pursuant to N.C.G.S. § 163-96(a)(2), as the Board has now done for the last two election cycles in a row. *See North Carolina Green Party v. North Carolina State Bd. of Elections ("NCGP")*, 619 F. Supp. 3d 547 (E.D. N.C. 2022). Contrary to Defendants' assertion, therefore, this case is not moot because the controversy it raises is not only capable of repetition yet evading review, but is in fact repeating now, in this very case. Only a declaratory judgment from this Court can finally resolve that controversy and prevent the wasteful and duplicative litigation caused by its continuing to evade review.

## NATURE OF THE CASE

This case involves a constitutional challenge to two North Carolina statutory provisions governing the certification of new political parties and the placement of their candidates on North Carolina's general election ballot. *See* N.C.G.S. § 163-96(a)(2) (requiring that the Board "forthwith" determine the sufficiency of the petitions that a new party files); N.C.G.S. § 163-98 (requiring that a new party certify its candidates to the Board for placement on the general election ballot "not later than the first day of July prior to the general election…"). Plaintiffs Johnny Thomas Ortiz II, Jimmie Gregory Rogers, Jr. and Weldon Murphy are North Carolina voters who signed JFA's petitions. They commenced this action on July 22, 2024, by filing their Complaint (D.E. 1) and Emergency Motion for a Preliminary Injunction (D.E. 8) after the Board failed to certify Intervenor-Plaintiff JFA as a new party prior to the July 1 deadline set forth in N.C.G.S. § 163-98 despite JFA's timely compliance with all applicable provisions of North Carolina law. (Compl. (D.E.1) ¶ 1.)

---

[1] Intervenor-Plaintiffs are separately filing a motion for summary judgment on their claim for declaratory relief.

Plaintiffs' Complaint asserts two claims: Count I asserts that the Board's failure to certify JFA as a new party violates Plaintiffs' associational and substantive due process rights under the First and Fourteenth Amendments; and Count II asserts that such failure violates Plaintiffs' procedural due process rights under the Fourteenth Amendment. (*Id*. ¶¶ 72-80.) Plaintiffs request two forms of relief. First, Plaintiffs request a judgment declaring that the Board's failure to certify JFA violates the First and Fourteenth Amendments. (*Id.* at 17 ¶ A.) Second, Plaintiffs request injunctive relief that: (1) directs the Board to certify JFA as a new political party entitled to place its candidates on North Carolina's 2024 general election ballot pursuant to N.C.G.S. § 163-96(a)(2); (2) enjoins the Board from enforcing the July 1, 2024 deadline against JFA; and (3) directs the Board to take any other action necessary to ensure the inclusion of JFA's candidates, including Dr. West, on North Carolina's 2024 general election ballot. (*Id.* at 17-18 ¶ B.) Plaintiffs also request that the Court retain jurisdiction over the action and grant any further relief that may be necessary and proper. (*Id.* at 18 ¶ D.)

On July 29, 2024, Intervenor-Plaintiffs JFA, its presidential nominee Dr. West and its state Chair Italo Medelius filed a Motion to Intervene (D.E. 44, 45) and a Complaint for Declaratory and Permanent Injunctive Relief (D.E. 44-1) ("Pl.-Int. Compl."). Intervenor-Plaintiffs alleged additional facts in their pleading, (Pl.-Int. Compl. ¶¶ 1-23), but relied on Plaintiffs' allegations and asserted the same claims and requested the same relief as Plaintiffs. (*Id.* ¶¶ 24-25.)

On August 12, 2024, the Court entered an Order granting Intervenor-Plaintiffs' Motion to Intervene and granting the preliminary injunctive relief Plaintiffs and Intervenor-Plaintiffs requested with respect to the 2024 general election. (D.E. 55.) Specifically, the Court ordered the Board to certify JFA as a new party pursuant to N.C.G.S. § 163-96(a)(2) and enjoined the Board from enforcing the July 1 deadline imposed by N.C.G.S. § 163-98 against JFA and its candidates.

(*Id.* at 29-30.)  But Plaintiffs and Intervenor-Plaintiffs did not request preliminary relief with respect to their claim for a declaratory judgment, and the Court did not rule on that claim.

North Carolina's general election took place on November 5, 2024 and, in accordance with the Court's Order, JFA's presidential candidate Dr. West appeared on the ballot.  But Defendants are wrong to assert that this case should now be dismissed as moot.  Defendants simply disregard that Intervenor-Plaintiffs seek declaratory relief in addition to the injunctive relief the Court has already granted.  Defendants also disregard that such relief is necessary to prevent the Board from unconstitutionally enforcing N.C.G.S. § 163-98 in future elections, as it has done in the last two elections in a row.  *See NCGP*, 619 F. Supp. 3d 547.  Intervenor-Plaintiffs' claim for declaratory relief thus falls squarely within the well-established exception to mootness for controversies that are capable of repetition yet evading review.  Defendants do not even attempt to address this exception or the long line of Fourth Circuit and Supreme Court precedent establishing that it applies here.  Their Motion should be denied.

## **STATEMENT OF FACTS**

The relevant facts are set forth in Plaintiffs' Complaint (D.E. 1), Intervenor-Plaintiffs' Complaint (D.E. 44-1), and in the Court's August 12, 2024 Order granting preliminary injunctive relief.  (D.E. 55 at 1-10.)  They need not be repeated here at length.  In brief, at all times relevant to this litigation, there has never been any dispute that JFA timely complied with all applicable provisions of North Carolina law, and that it was therefore entitled to be certified as a new political party under N.C.G.S. § 163-96(a)(2).  (D.E. 55 at 4-5, 8.)

To qualify as a new political party, JFA was required to submit petitions with at least 13,865 valid signatures to the Board by June 1, 2024.  (*Id.* at 4.)  JFA timely submitted 17,141 valid signatures.  (*Id.*)  Even though JFA had exceeded the requirement by more than 3,200

4

signatures and complied with all other applicable provisions of North Carolina law, the Board voted not to certify JFA at its June 26, 2023 meeting and again at its July 16, 2024 meeting. (*Id.* at 4, 6, 8.)

Despite the Board's failure to certify JFA, JFA properly held its nominating convention pursuant to N.C.G.S. § 163-98 and duly nominated Dr. West as its candidate for President, Dr. Melina Abdullah as its candidate for Vice-President, and Frankie Lee Gist as its candidate for Mayor of Winston-Salem. (*Id.* at 7.)

Plaintiffs filed this case on July 22, 2024 and filed their Emergency Motion for Preliminary Injunction on the same day. (D.E. 1; D.E. 8.) One week later, on July 29, 2024, Intervenor-Plaintiffs moved to intervene and filed their proposed pleading. (D.E. 44; D.E. 44-1.) On August 12, 2024, the Court entered its Order granting preliminary injunctive relief. (D.E. 55.) The Court: (1) ordered the Board to certify JFA as a new party; (2) enjoined the Board from enforcing the July 1 deadline set forth in N.C.G.S. § 163-98 as applied to JDA and its candidates; and (3) ordered Defendants to include JFA's duly nominated candidates on North Carolina's 2024 general election ballot. (*Id.* at 29-30.) The Court did not address Plaintiffs' claim for declaratory relief at all, because Plaintiffs did not request preliminary relief with respect to that claim.

The Court's August 12th Order expressly states that the Court not only "**RETAINS** jurisdiction to enforce the terms of this order," but also that the Court "**RETAINS** jurisdiction of all claims asserted by plaintiffs to grant such further and additional relief as the court deems appropriate, including declaratory relief…." (*Id.* at 30 (emphasis original).) The Court subsequently entered Orders extending the time for Defendants to respond to Plaintiffs' Complaint and Intervenor-Plaintiffs' Complaint until January 2, 2025. (D.E. 60; D.E. 65.) On that date, Defendants filed their Motion requesting dismissal pursuant to Rule 12(b)(1). (D.E. 66; D.E. 67.)

5

On January 17, 2025, with Defendants' consent, Plaintiffs and Intervenor-Plaintiffs filed a Motion requesting an extension of time to respond to Defendants' Motion to Dismiss until and including February 24, 2025. (D.E. 69.) That Motion is pending.

## LEGAL STANDARD

When a defendant moves for dismissal pursuant to Rule 12(b)(1) without contesting the truth of the jurisdictional facts alleged, as Defendants do here, the defendant "makes a facial challenge to subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). In such cases, the plaintiff "is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id.* (quoting *Adams*, 697 F.2d at 1219). Specifically, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.*

## ARGUMENT

**I. Intervenor-Plaintiffs' Claims Are Not Moot Because Intervenor-Plaintiffs Requested Declaratory Relief and Only a Final Judgment Granting Such Relief Will Prevent This Repeating Controversy From Continuing to Evade Review.**

In 2024, for the second consecutive election cycle, the Board unconstitutionally enforced the July 1 deadline imposed by N.C.G.S. § 163-98 against a party it failed to timely certify pursuant to N.C.G.S. § 163-96(a)(2). *Compare* (D.E. 55) *with NCGP*, 619 F. Supp. 3d 547. As a result, Intervenor-Plaintiffs, like the plaintiffs in *NCGP*, were obliged to seek emergency preliminary injunctive relief from this Court. In each case, the Court granted such relief as necessary to ensure that the plaintiff parties were able to participate in North Carolina's 2022 and 2024 general elections, respectively. After the passage of the 2022 general election, however, the Court granted the Board's motion to dismiss *NCGP* as moot, rejecting the plaintiffs' claim that the controversy

6

was not moot because it is capable of repetition yet evading review. *See North Carolina Green Party v. North Carolina State Bd. of Elections*, No. 5:22-cv-276 (E.D. N.C. Aug. 7, 2023) (unpublished order). Now that the controversy has repeated in the very next election cycle, Defendants again seek dismissal on mootness grounds and blithely assert, as they did in 2022, that "no further relief remains available." Mot. at 6. Defendants are incorrect. Further relief – a final judgment declaring N.C.G.S. § 163-98 unconstitutional insofar as it is enforced against a party the Board fails to timely certify pursuant to N.C.G.S. § 163-96(a)(2) – is not only available but necessary to prevent this repeating controversy from continuing to evade review, and to protect the fundamental rights of the voters, candidates and political parties who must comply with these provisions.

### A. Intervenor-Plaintiffs Are Entitled to a Final Judgment on the Merits of Their Claim for Declaratory Relief.

Defendants insist that because the Court granted preliminary injunctive relief as necessary to ensure Intervenor-Plaintiffs' participation in the 2024 general election, "no further relief remains available." (Mot. at 6.) They also contend that "it would be a waste of resources … if this litigation were to continue." (*Id.*) Defendants are incorrect on both points.

This Court's Order granting Intervenor-Plaintiffs a preliminary injunction was properly addressed to the limited relief necessary to protect Intervenor-Plaintiffs' rights in the 2024 general election only. (D.E. 55 at 29-30.) It did not constitute a final adjudication on the merits of Intervenor-Plaintiffs' claims, and thus it will not be binding on Defendants in a future case – indeed, the findings and conclusions contained therein are not even binding at trial on the merits of this case. *See Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 366 (4th Cir. 2004) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). As a result, in the absence of a final judgment on Intervenor-Plaintiffs' claim for declaratory relief, Defendants will be "free to return to [their]

7

old ways." *Comm. of Va. ex rel Coleman v. Califano*, 631 F.2d 324, 326 (4th Cir. 1980) ("This is sufficient to prevent mootness because of the public interest in having the legality of the practices settled.") (citation omitted).

As Defendants concede, a case does not become moot unless "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Mot. at 6 (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)). Here, subsequent events have made it absolutely clear – 100 percent certain, in fact – that the Board's unconstitutional enforcement of N.C.G.S. § 163-98 will recur. It has recurred. It occurred in 2022. It occurred again in 2024. And in each case it necessitated emergency litigation before this Court. Not only are Intervenor-Plaintiffs entitled to a final judgment on their claim for declaratory relief, but also, the granting of such relief will prevent the further waste of judicial resources caused by the repetitive litigation of claims that this Court can and should finally resolve here.

### B. Plaintiffs' Claims Are Not Moot Because They Fall Squarely Within the Exception for Controversies That Are Capable of Repetition Yet Evading Review.

Defendants' cursory discussion in support of their Motion consists of just two and one-half pages in which they erroneously assert that Intervenor-Plaintiffs' claims have been mooted by the passage of the November 2024 general election. (Mot. at 5-7.) But as a long line of Fourth Circuit and Supreme Court precedent makes clear, this case is a textbook example of a controversy that is not moot because it is capable of repetition yet evading review. Defendants make no attempt to address that precedent because they cannot. This case, which involves a controversy that is actually repeating, plainly falls within the exception to the mootness doctrine.

The exception to mootness for controversies that are "capable of repetition, yet evading review" applies when "(1) the challenged action is in its duration too short to be fully litigated

8

prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Lux v. Judd*, 651 F.3d 396, 401 (4th Cir. 2011) (quoting *Fed. Election Comm'n v. Wisc. Right to Life, Inc.,* 551 U.S. 449, 462 (2007)). Constitutional challenges to state election laws are a paradigmatic example of such controversies. *See Majors v. Abell*, 317 F.3d 719, 722-23 (7th Cir. 2003) (citing *Norman v. Reed*, 502 U.S. 279, 287-88 (1992); *Meyer v. Grant*, 486 U.S. 414, 417 n.2 (1988)). Election law challenges satisfy the exception when "there is a reasonable expectation that the challenged provisions will be applied against the plaintiffs again during future election cycles." *Lux*, 651 F.3d at 401 (quoting *N.C. Right to Life Comm. Fund for Indep. Political Expenditures v. Leake*, 524 F.3d 427, 435 (4th Cir. 2008)).

Time and again, the Fourth Circuit has concluded that election law challenges such as this fall within the capable of repetition yet evading review exception to mootness. *See*, *e.g.*, *Marcellus v. Virginia State Bd. of Elections*, 849 F.3d 169, 174 (4th Cir. 2017); *Pisano v. Strach*, 743 F.3d 927, 931 n.4 (4th Cir. 2014); *Lux*, 651 F.3d at 401; *Leake*, 524 F.3d at 435-36; *Miller v. Brown*, 503 F.3d 360, 364 n.5 (4th Cir. 2007); *LaRouche v. State Bd. of Elections*, 758 F.2d 998, 999 (4th Cir. 1985). In each of these cases, the Fourth Circuit found that the challenges fit comfortably within the exception. This case is no different.

Intervenor-Plaintiffs' claim for a judgment declaring N.C.G.S. § 163-96(a)(2) unconstitutional as applied in combination with N.C.G.S. § 163-98 easily satisfies the first prong of the capable of repetition yet evading review exception to mootness – whether the challenged conduct was too short in duration to be fully litigated before its cessation. This action was initiated on July 22, 2024 (D.E. 1) and Plaintiffs filed their Emergency Motion for Preliminary Injunction on the same date. (D.E. 8.) The 2024 general election was held barely three months later, on

November 5, 2024. (D.E. 55 at 30.) That period was too short to allow Intervenor-Plaintiffs to litigate their challenge to N.C.G.S. § 163-96(a)(2) to a final judgment on the merits, but it was long enough to prevent Intervenor-Plaintiffs from complying with the July 1 deadline set forth in N.C.G.S. § 163-98. Intervenor-Plaintiffs obtained timely relief from that deadline only because the Court emergency preliminary injunctive relief. (*Id.* at 29-30.)

The second prong – whether there is a reasonable expectation that Intervenor-Plaintiffs will be subject to the challenged provisions in future elections – is also easily satisfied. N.C.G.S. § 163-96(a)(2) and N.C.G.S. § 163-98 have not been repealed and remain in effect. Further, Plaintiffs expressly allege that they intend to participate in future elections in North Carolina. (Int.-Pl. Compl. ¶¶ 3-4); *see Leake*, 524 F.3d at 435-36 (concluding that plaintiffs satisfy the reasonable expectation prong even if they do not specifically allege such intent). When Intervenor-Plaintiffs do, they will be obliged to comply with both N.C.G.S. § 163-96(a)(2) and N.C.G.S. § 163-98 because JFA did not run a candidate for Governor and its candidate for President did not appear on the ballot of at least 70 percent of the states. *See* N.C.G.S. §§ 163-96(a)(1). (3). Therefore there is a reasonable expectation that Intervenor-Plaintiffs will be subject to N.C.G.S. § 163-96(a)(2) and N.C.G.S. § 163-98 in future elections. *See Lux*, 651 F.3d at 401; *Leake*, 524 F.3d at 435-36.

Additionally, nothing in the text of N.C.G.S. § 163-96(a)(2) requires the Board to certify a party for the ballot prior to the July 1 deadline set forth in N.C.G.S. § 163-98. The statute only requires that the Board determine the sufficiency of a party's petitions "forthwith." N.C.G.S. § 163-96(a)(2). The Board's conduct in this case, and in *NCGP*, demonstrates that it construes that requirement to permit certification after the July 1 deadline imposed by N.C.G.S. § 163-98. The lack of a statutory deadline for the Board to certify a new party, and the Board's demonstrated willingness to delay certification until after the July 1 deadline has passed, makes it even more

likely that the Board will engage in the same conduct in a future election. The reasonable expectation prong is satisfied.

The foregoing facts demonstrate that this case falls squarely within the long line of precedent in which the Fourth Circuit has held that election law challenges are not moot because they are capable of repetition yet evading review. In *Lux*, for example, an independent candidate for Congress in the 2010 general election challenged the constitutionality of a Virginia law that required a district resident to witness each signature on the candidate's nomination petition. *See Lux*, 651 F.3d at 398. The district court denied the candidate's motion for a preliminary injunction, dismissed the case, and the candidate did not appear on Virginia's 2010 general election ballot. *See id.* On appeal, the defendant board of elections argued that "with the 2010 election long past, Lux's … claim is moot." *Id.* at 401 (footnote omitted). The Fourth Circuit rejected the argument. *See id.* The candidate's allegations that he intended to run for office in the future "support a reasonable expectation" that he would be harmed by the challenged requirement in the future. *Id.* "As a result, Lux's challenge fits comfortably into the mootness exception for conduct capable of repetition yet evading review." *Id.*

In *Leake*, the Fourth Circuit concluded that the exception applies even in cases where plaintiffs do not specifically allege an intent to participate in future elections. *See Leake*, 524 F.3d at 435-36. The plaintiffs in *Leake* made no such allegation but the Fourth Circuit still found "a reasonable expectation that the challenged provisions will be applied against [them] again during future election cycles." *Id.* at 435. The fact that a plaintiff candidate "ha[d] run for office before and may well do so again" was sufficient to support that conclusion. *Id.* at 436 (quoting *Int'l Org. of Masters, Mates & Pilots v. Brown,* 498 U.S. 466, 473 (1991)). The case was therefore not moot despite the passage of the election in which the candidate had run. *See id.* at 432, 435-36.

11

In *Larouche*, the district court granted the plaintiff candidate a preliminary injunction and ordered the defendant board of elections to place him on North Carolina's 1984 primary election ballot. *See LaRouche*, 758 F.2d at 999. The injunction was stayed and both the primary and general elections were held without the candidate's name on the ballot. *See id.* The board of elections nonetheless appealed and the Fourth Circuit concluded that the case was "not moot because it presents facts which are 'capable of repetition, yet evading review.'" *Id.* (quoting *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515 (1910)). The Fourth Circuit therefore vacated the stayed preliminary injunction and reversed the order granting it. *See id*. at 1000.

In *Miller*, the district court entered an order enjoining the defendant state board of elections from enforcing a Virginia law that required a political party to hold an open primary in 2007. *See Miller*, 503 F.3d at 362. On appeal, the board of elections argued that the case was moot because the plaintiff candidate had obtained his party's nomination unopposed and no primary election would be held for his seat in 2007. *See id.* at 364 n.5. The Fourth Circuit again rejected the argument and concluded that "the case is not moot because it presents issues that are 'capable of repetition, yet evading review.'" *Id.* (quoting *Southern Pacific Terminal Co.*, 219 U.S. at 515; citing *Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974) (explaining that this doctrine is properly applied in cases involving facial or as-applied challenges to election statutes when election at issue has passed but same questions are likely to arise in future elections)).

Here, as in each of the foregoing cases, Intervenor-Plaintiffs' claim that N.C.G.S. § 163-96(a)(2) and N.C.G.S. § 163-98 are unconstitutional as applied to them in 2024 is not moot. Intervenor-Plaintiffs did not have time to litigate that claim prior to the November 2024 general election and there is a reasonable expectation if not a strong probability that they will be subject

to these provisions in future elections. *See generally Lux*, 651 F.3d at 401; *Leake*, 524 F.3d at 435-36. Defendants insist that because "[t]he election has now passed … no further relief remains available," (Mot. at 6), but that is simply incorrect. Defendants disregard that Intervenor-Plaintiffs seek declaratory relief in addition to the injunctive relief the Court previously granted. Further, Defendants directly contradict the Fourth Circuit and Supreme Court precedent cited herein, which they do not even attempt to address. Plaintiffs are entitled to a final judgment on the merits of their claim that N.C.G.S. § 163-96(a)(2) is unconstitutional insofar as it is construed to authorize certification of a new party after the July 1 deadline set forth in N.C.G.S. § 163-98. That claim is not moot.

Dated: February 24, 2025

Respectfully submitted,

/s/Oliver B. Hall
Oliver B. Hall
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, DC 20009
202-248-9294
oliverhall@competitivedemocracy.org
D.C. Bar No. 976463

/s/Christopher R Lusby
Lusby Law PA
2860-A Ward Blvd
Wilson, NC 27893
252-221-3223
www.lusbylaw.com
State Bar No: 52274
Local Civil Rule 83.1(d) Counsel

*Counsel for Plaintiff-Intervenors*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2025 the foregoing document was filed using the Court's CM/ECF system, which will effect service upon all counsel of record.

/s/Oliver B. Hall
Oliver B. Hall

*Counsel for Intervenor-Plaintiffs*