IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-cv-00420-BO

| | |
|---|---|
| JOHNNY THOMAS ORTIZ II, *et al.*, | ) |
| Plaintiffs, | ) |
| JUSTICE FOR ALL PARTY OF NORTH CAROLINA, *et al.*, | ) **INTERVENOR-PLAINTIFFS'** |
| Intervenor-Plaintiffs, | ) **MEMORANDUM IN SUPPORT** |
| v. | ) **OF MOTION FOR LEAVE TO** |
| NORTH CAROLINA STATE BOARD OF ELECTIONS, *et al.*, | ) **FILE FIRST AMENDED** |
| Defendants. | ) **COMPLAINT** |

## NATURE OF THE CASE AND FACTUAL BACKGROUND

This action was commenced on July 22, 2024 by Plaintiffs Johnny Thomas Ortiz II, Jimmie Gregory Rogers Jr. and Weldon Murphy ("Plaintiffs") against Defendants North Carolina State Board of Elections, its members and Executive Director in their official capacities (collectively, "the Board"). Plaintiffs are voters who signed nomination petitions to qualify the Justice For All Party of North Carolina as a new political party in 2024. Intervenor-Plaintiffs are the Justice For All Party of North Carolina, its 2024 presidential nominee Dr. Cornel West and its Chair, Italo Medelius (collectively, "JFA"). Plaintiffs and JFA assert claims against the Board pursuant to 42 U.S.C. § 1983 for the violation of their First and Fourteenth Amendment rights arising from the Board's failure to certify JFA as a new political party despite JFA's timely compliance with all applicable statutory requirements.

To qualify as a new political party in 2024, JFA was required to submit nomination petitions containing the signatures of 13,865 registered and qualified voters, including 200 signatures of voters from three congressional districts, which county boards of elections had validated, to the Board by noon on June 1. *See* N.C. Gen. Stat. § 163-96(a)(2); *Ortiz v. North Carolina State Board of Elections*, No. 5:24-CV-00420-BO, 2024 WL 3764561, at *4 (E.D.N.C. Aug. 12, 2024) [DE 55] ("PI Order"). JFA timely submitted nomination petitions containing the validated signatures of 17,141 North Carolina voters, including Plaintiffs, and timely complied with all other statutory requirements to qualify as a new political party and place its candidates on the 2024 general election ballot. (PI Order at 4, 7). The Board nonetheless voted 3-2 not to certify JFA as a political party on July 16, 2024. (*Id.* at 8). The Board cited no statutory or other authority for its failure to certify JFA. (*Id.*). Instead, the Board's Chair cited several factors that do not authorize the Board to deny a new party certification, including his concern that JFA had not adequately complied with the requirement that petition circulators notify potential signers of the "purpose and intent" of the party. (PI Order at 8); *see* N.C. Gen. Stat. § 163-96(b).

On July 22, 2024 Plaintiffs moved for a preliminary injunction directing the Board to certify JFA as a political party and to enjoin the Board from enforcing the July 1 deadline for a new party to certify its candidates for the ballot against JFA. *See* N.C. Gen. Stat. § 163-98; (PI Order at 9); [DE 8]. JFA thereafter moved to intervene and filed a proposed Complaint. (PI Order at 10); [DE 44, 44-1]. The Court granted JFA's motion from the bench during a July 30, 2024 hearing on Plaintiffs' preliminary injunction motion. (PI Order at 10.) On August 12, 2024, the Court granted Plaintiffs' preliminary injunction motion in part, ordering the Board to certify JFA as a new political party and enjoining the Board from enforcing the July 1 deadline for certification of a new party's candidates against JFA. (PI Order at 1, 4, 29-30.)

The 2024 general election was held and JFA's candidates appeared on North Carolina's ballot. Thereafter, the Board proposed extensive new rules applicable to political parties that seek to qualify for the ballot, which took effect on July 1, 2025.[1] The rules govern, *inter alia*: (1) how a party demonstrates compliance with the purpose and intent requirement set forth in § 163-96(b) (Rule 22.0305); (2) how the Board determines the sufficiency of a party's nomination petitions under § 163-96(a) (Rule 22.0306); and (3) how petition signers may obtain removal of their signatures from a party's nomination petition (Rule 22.0204). JFA seeks leave to amend its Complaint to assert claims challenging the constitutionality of these new rules and the purpose and intent requirement in § 163-96(b).

## **LEGAL STANDARD**

Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "This liberal rule gives effect to the federal policy in favor of resolving cases on the merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (citations omitted). The Fourth Circuit interprets Rule 15(a) to provide that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Id.* at 426-27 (citations and footnote omitted). "An amendment is not prejudicial … if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." *Id.* at 427 (citation omitted). An amendment is "futile" if it is "clearly insufficient or frivolous on its face" or if it "fails to withstand Rule 12(b)(6) scrutiny." *In Re Triangle Capital Corp. Securities Litigation*, 988 F.3d 743, 750 (4th Cir. 2021) (citations omitted).

---

[1] The new rules are attached, in pertinent part, as Exhibit A to JFA's proposed First Amended Complaint. They are also available on the Board's website at https://www.ncsbe.gov/about-elections/legal-resources/rulemaking (accessed July 17, 2025). The rules state that they are "Eff. July 1, 2025."

3

# ARGUMENT

### I. JFA Should Be Granted Leave to Amend Its Pleading to Assert Claims That Arose After JFA Filed Its Original Complaint.

JFA seeks leave to amend its pleading for the limited purpose of asserting claims that could not have been included in its original Complaint because they arose after JFA filed it. When JFA filed its Complaint, it could not have known the Board would subsequently enact extensive new rules that expand upon the purpose and intent requirement set forth in § 163-96(b), *see* Rule 22.0305, that authorize the Board to deny certification to new parties despite their full compliance with North Carolina statutory law, *see* Rule 22.0306, and that establish a new procedure whereby petition signers may obtain removal of their signatures after the deadline for signature collection passes. *See* Rule 22.0204. These rules took effect just three weeks ago, on July 1, 2025. JFA reasonably seeks leave to amend its pleading to assert claims against these new rules and § 163-96(b)'s purpose and intent requirement.

### A. JFA Should Be Granted Leave to Amend Its Complaint Because JFA Easily Satisfies the Standard Applicable to Motions Filed Under Rule 15(a).

"[L]eave to amend a pleading should be denied *only* when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber*, 438 F.3d at 426-27 (citations and footnote omitted) (emphasis added). Because none of these factors are present here, JFA should be granted leave to amend its Complaint.

#### 1. JFA's Proposed Amendment Is Not Prejudicial to the Board.

The Fourth Circuit has squarely concluded that "[a]n amendment is not prejudicial … if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." *Id.* at 427 (citation omitted). That is the case here. JFA seeks leave to

4

amend its Complaint to include an additional theory of recovery – that the Board's new rules and the purpose and intent requirement in § 163-96(b) violate the First Amendment facially and as applied – and this theory is based on the facts already pled and those subsequently developed in the record of this case. Further, the parties have not taken any discovery. Therefore, there is no colorable basis on which the Board can claim to be prejudiced by JFA's proposed amendments.

### 2. JFA Seeks in Good Faith to Amend Its Pleading to Assert Claims JFA Could Not Have Included in Its Original Complaint.

There is also no colorable basis for any finding that JFA is proceeding in bad faith. On the contrary, JFA reasonably and in good faith seeks leave to amend its pleading to assert claims JFA could not have included in its original Complaint because they arise from events that occurred after JFA filed that pleading. Further, JFA has moved for leave to amend promptly, just three weeks after the Board adopted the new rules JFA seeks to challenge. JFA is therefore proceeding diligently to assert its claims as soon as they became ripe.

### 3. JFA's Proposed Amendments Are Not Futile Because JFA Seeks to Assert Well-Pleaded Claims That Easily Withstand Rule 12(b)(6) Scrutiny.

Finally, JFA's proposed amendments are not futile because the claims it seeks to assert are well-pleaded and easily withstand scrutiny under Federal Rule of Civil Procedure 12(b)(6). A complaint withstands Rule 12(b)(6) scrutiny if it alleges "sufficient facts to state a claim that is plausible on its face." *EI Du Pont de Nemours v. Kolon Industries, Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citation and quotation marks omitted). The complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* (citation omitted). JFA's claims satisfy that standard.

In Count III – the first new count of JFA's proposed First Amended Complaint – JFA asserts that the purpose and intent requirement of § 163-96(b) and Rule 22.0305 and Rule 22.0306 violate

the First Amendment facially and as applied because they vest the Board with unbounded discretion to enforce a content-based prior restraint on new political parties like JFA, *see Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130-36 (1992), and because they impermissibly infringe such parties' "core political speech." *Meyer v. Grant*, 486 U.S. 414, 420-22 (1988); (Plaintiff-Intervenors' First Amended Complaint ("First Am. Compl.") ¶¶ 69-75). Section 163-96(b) requires that petition circulators for a new party "shall inform the signers of the general purpose and intent of the new party," and Rule 22.0305 requires that county boards of election "shall not" validate the new party's signatures until the new party submits documentation to the Board demonstrating that its petition circulators complied with the purpose and intent requirement. That is a prior restraint. It is content-based because Rule 22.0305 and Rule 22.0306 authorize the Board to deny certification to a new party if the Board concludes the new party's speech fails to satisfy the purpose and intent requirement. And the rules vest the Board with unbounded discretion because they provide no objective, definite standards to guide its inquiry into the adequacy or sufficiency of the new party's speech. Such a scheme is facially unconstitutional, *see Forsyth County*, 505 U.S. at 130-31, and unduly burdens JFA's core political speech. *See Meyer*, 486 U.S. at 425.

North Carolina's scheme is also unconstitutional as applied to JFA because the facts alleged establish that the Board denied certification to JFA largely because it concluded JFA's speech did not comply with § 163-96(b)'s purpose and intent requirement. For example, the Board's Chair opined that at least 50 percent of the signatures on JFA's petitions were "highly questionable" because he believed petition circulators did not accurately communicate JFA's genuine purpose and intent to the petition signers. (First Am. Compl. ¶ 64). Another Board member suggested that JFA was a "faux party" created for a purpose she erroneously believed to be improper – "allowing

6

unaffiliated candidates to follow the more lenient new party rules….” (First Am. Compl. ¶ 57). The First Amendment, however, does not permit elections officials to deny certification to a new political party because they disagree with the speech its petition circulators use to communicate with potential supporters or because they believe the purpose for which it was formed is somehow improper.

In Count IV, JFA asserts that Rule 22.0306 violates the First Amendment facially and as applied because it vests the Board with unbounded discretion to deny certification to a new party even if the party timely complies with all applicable statutory requirements. (First Am. Compl. ¶¶ 76-83). Rule 22.0306(d) expressly states that a new party's full compliance with North Carolina's statutory requirements is just one factor the Board "shall take … into account when determining the sufficiency of a new party petition." Other factors include the "report" that Board staff is directed to prepare pursuant to Rule 22.0306(c), which includes a review of the "documentation" the new party must submit pursuant to Rule 22.0305 to demonstrate compliance with § 163-96(b)'s purpose and intent requirement. These provisions violate the First Amendment for the same reasons outlined above.

Last, in Count V, JFA asserts that Rule 22.0204 is unconstitutional facially and as applied because it severely burdens a new party like JFA's First and Fourteenth Amendment rights and is not narrowly tailored to further a compelling state interest. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); (First Am. Compl. ¶¶ 84-89). Rule 22.0204 establishes a procedure that authorizes signers of a new party's petitions to obtain removal of their signatures even after the deadline for signature collection has passed. Such a procedure severely burdens any new party that submits nomination petitions with a sufficient number of validated signatures only to find, after the signature collection period has expired, that enough

7

petition signers obtain removal of their signatures to bring the new party below the signature requirement. As JFA will prove, this threat is real: ample evidence demonstrates that adversaries of new parties have engaged in concerted efforts to harass and coerce petition signers into requesting removal of their signatures even before the procedure was authorized under Rule 22.0204.

JFA need not establish here that it will prevail on the merits, but only that its proposed First Amended Complaint states plausible claims for relief and provides the Board with fair notice of the grounds on which they rely. *See EI Du Pont de Nemours*, 637 F.3d at 440. JFA has satisfied that standard. It should be granted leave to amend its Complaint.

## **CONCLUSION**

For the foregoing reasons, the Court should grant JFA's Motion for Leave to File First Amended Complaint.

Dated: <u>July 25, 2025</u>

                                                                    Respectfully submitted,

/s/Oliver B. Hall
Oliver B. Hall
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, D.C. 20009
202-248-9294
oliverhall@competitivedemocracy.org
D.C. Bar No. 976463
Attorney for Intervenor-Plaintiffs

Christopher R. Lusby
Lusby Law PA
2860-A Ward Blvd
Wilson, NC 27893
252-221-3223
www.lusbylaw.com
State Bar No: 52274
Local Civil Rule 83.1(d) Attorney for Intervenor-Plaintiffs

## CERTIFICATE OF SERVICE

      I hereby certify that on July 25, 2025, the foregoing document was filed using the Court's CM/ECF system, which will effect service upon all counsel of record.

                                          /s/Oliver B. Hall
                                          Oliver B. Hall