UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:24-cv-00420-BO-BM

| | |
|---|---|
| JOHNNY THOMAS ORTIZ, II, et al. )<br>)<br>Plaintiffs, )<br>)<br>and )<br>)<br>CORNEL WEST, et al., )<br>)<br>Intervenor-Plaintiffs, )<br>)<br>v. )<br>)<br>NORTH CAROLINA STATE BOARD OF )<br>ELECTIONS, et al., )<br>)<br>Defendants. ) | **RESPONSE IN OPPOSITION TO INTERVENOR-PLAINTIFFS' MOTION TO AMEND** |

**NOW COME** Defendants the North Carolina State Board of Elections, Francis X. De Luca, Stacy Eggers, IV, Jeff Carmon, Siobhan O'Duffy Millen, Robert Rucho, and Sam Hayes, named in their official capacities only ("State Board" or "Defendants"), through counsel, to provide this response in opposition to the motion for leave to file a first amended complaint filed by Intervenor-Plaintiffs, Dr. Cornel West, Italo Medelius, and the North Carolina Justice For All Party. [D.E. 90]. For the reasons stated below, this Court should deny the motion because JFA Plaintiffs' proposed amendments are futile.

## NATURE OF THE CASE

JFA Plaintiffs are Dr. Cornel West, 2024 Presidential candidate for the Justice for All Party ("JFA"), Italo Medelius, Chair of JFA, and the North Carolina Justice for All Party (collectively JFA Plaintiffs"). [D.E. 90-1, ¶¶ 2-4]. On July 22, 2024, Plaintiffs filed the present suit to compel the State Board of Elections to certify JFA as a political party in North Carolina

under N.C.G.S. § 163-96(a) and to place JFA's chosen candidates, including Dr. West, on the ballot for the November 2024 general election. [D.E. 1, ¶¶ 1, 2, 7-9, pp 17-18]. The JFA Plaintiffs would later intervene as plaintiffs. [D.E. 44, 55, 56].

On August 12, 2024, this Court ordered that JFA be certified as a political party and its candidates be placed on the ballot. [D.E. 55]. The State Board duly certified the party and placed its candidates on the November 2024 general election ballot.[1] As a result of failing to meet statutorily mandate minimal electoral support in that election[2], JFA is no longer a certified political party in this State.[3] As such, all claims and relief requested arising under N.C.G.S. § 163-96(a)(1) are now moot, including any request for declaratory relief. *See* Memorandum of Law in support of State Board Motion to Dismiss [D.E. 67].

Accordingly, the State Board moved to dismiss this action, Plaintiffs filed no response, and JFA Plaintiffs opposed. [D.E. 66, 67, 73, 74]. Plaintiffs then moved for summary judgment,

---

[1] *See* N.C. State Bd. of Elections Website, Press Release: State Board Recognizes Justice for All as Official Political Party in N.C. (Aug. 20, 2024), *available at* https://www.ncsbe.gov/news/press-releases/2024/08/20/state-board-recognizes-justice-all-official-political-party-nc (last visited August 11, 2025); *see also Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (providing courts "may properly take judicial notice of matters of public record"); *Blue Tree Hotels v. Starwood Hotels & Resorts*, 369 F.3d 212, 217 (2d Cir. 2004) (concluding courts "may also look to public records, including complaints filed in state court, in deciding a motion to dismiss"); *see also* Fed. R. Evid. 201.

[2] For JFA to maintain its status as a certified political party, its presidential candidate was required to get at least two percent of the votes cast for that office in the November 2024 election and received only 0.021 percent. N.C.G.S. § 163-96(a)(1); *see* N.C. State Bd. of Elections Website, 11/05/ Official Gen. Election Results – Statewide: U.S. President, *available at* https://er.ncsbe.gov/?election_dt=11/05/2024&county_id=0&office=FED&contest=1393 (last visited August 11, 2025).

[3] *See* N.C. State Bd. Of Elections Website, Press Release: Voters Once Affiliated with Certain NC Political Parties to be Moved to Unaffiliated Status (June 19, 2025), *available at* https://www.ncsbe.gov/news/press-releases/2025/06/19/voters-once-affiliated-certain-nc-political-parties-be-moved-unaffiliated-status (last visited August 11, 2025).

JFA Plaintiffs filed no response, and the State Board opposed. [D.E. 81, 82, 83, 88, 89, 92, 93]. Finally, on July 25, 2025, a year after this action was commenced, JFA Plaintiffs filed the instant motion for leave to amend. [D.E. 90, 91].

The State Board opposes this motion because the proposed amendments are futile as they rely on a harm that might take place if JFA decides to undertake a new attempt to seek party certification resulting in a new decision at some date in the future based on new rules that have not yet been adopted. Any claim based on this speculative future harm is not yet ripe and is insufficient to breathe new life into the existing moot claims. For these reasons, JFA Plaintiffs' proposed amendments are insufficient and cannot state a claim upon which relief can be granted, such that the amendment is futile and the motion for leave to amend should be denied.

## STATEMENT OF FACTS

The facts of this case have been briefed multiple times over to this Court in the pending motions. Rather than retread that ground, the State Board incorporates by reference the Statements of Facts in support of its motion to dismiss and in its response to summary judgment as if set forth fully herein. [D.E. 67, pp. 2-4 and D.E. 89, pp. 2-4].

Additionally, the State Board provides the following factual information relevant to this motion and the new allegations in the proposed Amended Complaint. In the proposed Amended Complaint, the new allegations are either inaccurate and/or raise entirely new claims based on administrative rules covering the new party recognition process that are not yet in effect, have not been implemented, and have not resulted in any party, much less JFA, being denied party status.

*Proposed Administrative Rules*

As a starting point, JFA Plaintiffs are wrong to assert that the State Board enacted new rules that took effect on July 1, 2025. [D.E. 90-1, ¶ 29]. The State Board proposed and adopted rules for submission to the North Carolina Rules Review Commission, which ultimately reviews and approves rules proposed by agencies. *See* N.C.G.S. §§ 150B-21.2(g) ("An agency must submit an adopted rule to the Rules Review Commission within 30 days of the agency's adoption of the rule."); and -23.3(b) ("A permanent rule approved by the Commission becomes effective on the first day of the month following the month the rule is approved by the Commission…"). The rules proposed by the State Board remain before the Commission, have not been approved by the Commission, and are not yet in effect.[4] That is an ongoing state administrative process. The proposed rules are currently scheduled to be considered at the Rules Review Commission's upcoming August 28, 2025 meeting. *Id.*

JFA Plaintiffs' amended complaint goes on to assert that they are harmed by three proposed new rules addressing procedures regarding the purpose and intent of a new political party, the factors by which the State Board will determine the sufficiency of a new party's petition, and how a person who signs a petition may remove their name from the petition. [D.E. 90-1, ¶¶ 28-45]. The latter was never approved and is not before the Rules Review Commission. The two remaining proposed rules are intended to provide clarity and transparency to the process in order to make it easier for prospective political parties to demonstrate compliance with the law.

---

[4] *See* N.C. Office of Administrative Hearings, RRC Meeting Agenda August 2025, *available at* https://www.oah.nc.gov/news/events/rrc-meeting-agenda-august-2025 (last visited August 13, 2025).

4

First, proposed rule 08 N.C.A.C 22.0305 seeks to confirm whether new party petitioners have complied with a state law requirement to inform signers of the purpose and intent of the new party. *See* N.C.G.S. § 163-96(b) ("… the organizers and petition circulators shall inform the signers of the general purpose and intent of the new party."). The rule merely requires the prospective party to provide documentation of those efforts in the form of training materials, scripts, or handouts. N.C. Office of Administrative Hearings, RRC Meeting Agenda August 2025, Request for Changes by Commission Pursuant to G.S. 150B-21.10 to Rules Submitted by State Board, (August 4, 2025), *available at* https://www.oah.nc.gov/board-election-rfc-august-2025/open (last visited August 14, 2025), attached hereto for reference as Exhibit A[5], 08 N.C.A.C. 22.0305, p. 47. This rule is intended to ensure that relevant information necessary for this process is provided on the front end rather than being left entirely for the back end, which has caused delays in prior election cycles. *Id.* The law and the rule call only for a general purpose and intent. *Id.* Contrary to JFA Plaintiffs' allegations, the law and rule contain no restriction or limitation on what constitutes a valid purpose or intent. *Id.*

Second, proposed rule 08 N.C.A.C. 22.0306 clarifies the process that will occur at the State Board level once a prospective party believes it has passed the requisite threshold of signatures, what is required of it to initiate that process, the swift timeline under which the State Board staff must review those submissions, and the information the State Board itself will consider as part of its review. Ex. A, 08 N.C.A.C. 22.0306, pp. 49-50. The rule directs that the

---

[5] As noted throughout Exhibit A, this version of the proposed rules is the version submitted by the State Board with requests for recommended changes by Commission counsel pursuant to N.C.G.S. § 150B-21.10 and prior to review by the Commission members or any decision to reject or approve the rules. *See e.g.,* Ex. A, p. 1. This process is ongoing and the proposed rules, if eventually put into effect, could still change from this version.

5

State Board's review must not be "likely to subject the petitioner to undue burden, expense, or delay in the consideration of their petition." *Id.*, 22.0306(c), p. 50.

Third, in their haste to try to revive a dead case, JFA Plaintiffs failed to notice that proposed rule 08 N.C.A.C. 22.0204, which they feature in their proposed Amended Complaint, was not adopted by the State Board and has not been submitted to the North Carolina Rules Review Commission for Approval. Ex. A., pp. 37-38 (proceeding directly from 08 N.C.A.C. 22.0203 to 22.0301). JFA Plaintiffs' claims in this regard are therefore moot on arrival.

<u>Recognition of New Parties by the State Board</u>

JFA Plaintiffs' Amended Complaint closes its new allegations by repeating previous allegations that the State Board has "repeatedly" failed to certify new parties over the last two election cycles. [D.E. 90-1, ¶¶ 46-66]. Easily accessible public records demonstrate that this narrative is false. Over the last two elections cycles, from 2020 to present, the State Board has routinely and consistently reviewed and approved new parties who met the statutory requirements to be recognized. In 2022, the State Board considered the petitions of the Green Party, and after further investigation, certified it as a new party on August 1, 2022.[6] Days later on August 5, 2022, this Court enjoined a statutory July 1 candidate filing deadline and ordered the State Board to place the Green Party's candidates on the 2022 general election ballot. *See N.C. Green Party v. N.C. State Bd. of Elections*, 619 F. Supp. 3d 547, 570 (E.D.N.C. 2022). In 2023, the State Board was called upon to review the Petitions of the No Labels Party, found that

---

[6] *See* N.C. State Bd. Of Elections Website, Press Release: State Board Recognizes Green Party as NC Political Party (August 1, 2022), *available at* https://www.ncsbe.gov/news/press-releases/2022/08/01/state-board-recognizes-green-party-nc-political-party (last visited August 12, 2025).

6

it met the statutory requirements and recognized it as a political party in North Carolina.[7] In 2024, the State Board received and considered the petitions from three more political parties, the Constitution Party, We The People Party, and JFA.[8] On July 9, 2024, the State Board voted to recognize the Constitution Party, and in doing so, applied the legal ruling from the Green Party action a year before to extend the July 1 candidate filing deadline. *Id.* A week later on July 16, 2024, the State Board recognized We The People as a North Carolina political party and accepted their candidates to be on the ballot in the upcoming general election.[9] At the same meeting, and the only time in the last five years, the State Board voted not to certify a new political party: JFA. *Id.* Finally, on June 19, 2025, the State Board considered and granted the request of the Green Party to be recognized again based on it meeting the requisite level of national support to remain a party.[10] Thus, the State Board has recognized every political party that sought recognition in the last five years, with only one exception.

*Failure to Allege JFA is Seeking Certification*

Notably, none of the new allegations in the proposed Amended Complaint contains any allegation by JFA that it is seeking recognition as a political party in North Carolina now that it

---

[7] *See* N.C. State Bd. Of Elections Website, Press Release: State Board Recognizes No Labels as a Political Party (August 13, 2023), *available at* https://www.ncsbe.gov/news/press-releases/2023/08/13/state-board-recognizes-no-labels-political-party (last visited August 12, 2025).

[8] *See* N.C. State Bd. Of Elections Website, Press Release: State Board Recognizes Constitution Party as Official NC Political Party (July 9, 2024), *available at* https://www.ncsbe.gov/news/press-releases/2024/07/09/state-board-recognizes-constitution-party-official-nc-political-party (last visited August 12, 2025).

[9] *See* N.C. State Bd. Of Elections Website, Press Release: State Board Recognizes We The People as Official NC Political Party (July 16, 2024), *available at* https://www.ncsbe.gov/news/press-releases/2024/07/16/state-board-recognizes-we-people-official-nc-political-party (last visited August 12, 2025).

[10] *See supra,* note 3.

has lost that status following the results of the 2024 election. [D.E. 90-1, ¶¶ 26-88]. This is supported by the State Board's public records which demonstrate that eight political parties are currently seeking certification during this election cycle, including two of the three parties that lost recognition after 2024 (Constitution Party and We The People), but notably not including JFA.[11]

## LEGAL STANDARD

Pursuant to Rule 15(a)(1), a party may amend a pleading "once as a matter of course (A) within 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading, 21 days after service of a motion under Fed. R. Civ. P. 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). When a party delays beyond those two options, it falls into Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

In this matter, JFA Plaintiffs' complaint was filed over a year ago on August 12, 2024, no responsive pleading was filed by the State Board, and the State Board filed its motion to dismiss over eight months ago on January 2, 2025. [DE 56, 66]. As a result, JFA Plaintiffs must obtain leave of court to amend at this point pursuant to Rule 15(a)(2).

The decision to grant or deny a motion to amend is within the discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Furthermore, "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat*

---

[11] *See* N.C. State Bd. Of Elections Website, Petition Search (August 12, 2025), *available at* https://vt.ncsbe.gov/PetLkup/ (last visited August 12, 2025).

8

Case 5:24-cv-00420-BO-BM    Document 94    Filed 08/15/25    Page 8 of 17

*Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986).  Traditionally, a proposed amendment is futile when it is "clearly insufficient or frivolous on its face."  *In re Triangle Capital Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021) (quoting *Johnson* at 510).  Or more recently, "if the complaint fails to withstand Rule 12(b)(6) scrutiny."  *Id.* (citing *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011)).

The analysis required here is straightforward:  The case as it stands is dead. The motion to amend is a futile attempt to revive a corpse by dreaming up unrelated claims based on speculative harms and a fundamental misunderstanding of state law.  It remains the State Board's position that the underlying claims are moot and should be dismissed under Rule 12(b)(1) regardless of whether this motion is granted or denied.  But JFA Plaintiffs' proposed amendment also presents entirely new claims that are not yet ripe, lack standing, and do not cure this Court's lack of subject matter jurisdiction.  Logically, such an attempt to overcome mootness by asserting all new claims that have not yet occurred and are based on rules that have not yet been approved by the North Carolina Rules Review Commission, should be considered "clearly insufficient or frivolous on its face."  Moreover, as noted above, in more recent case law, the analysis to determine if proposed amendments are futile calls for the application of the failure to state a claim upon which relief can be granted under Rule 12(b)(6). *In re Triangle*, 988 F.3d at 750.  JFA Plaintiffs agree that either standard can be applied.  [D.E. 91, p. 3 ("An amendment is 'futile' if it is 'clearly insufficient or frivolous on its face' or if it 'fails to withstand Rule 12(b)(6) scrutiny.'" (citing *In re Triangle*, 988 F.3d at 750))].

Moreover, "challenges to subject-matter jurisdiction may be raised by the defendant 'at any point in the litigation,' and courts must consider them *sua sponte*." *Fort Bend Cty. v. Davis*, 587 U.S. 541, 548, 139 S. Ct. 1843, 1849 (2019) (quoting *Gonzalez v. Thaler*, 565 U. S. 134, 141,

132 S. Ct. 641, 181 L. Ed. 2d 619 (2012)); *see also* Fed. R. Civ. P. 12(h)(3)("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.") If this court lacks subject matter jurisdiction both because the old claims are moot and the new claims are not yet ripe, it would be illogical to permit futile amendments that would only be dismissed later.

For the reasons stated below, the underlying claims remain moot and JFA Plaintiffs' new claims are moot or not yet ripe. *See AFGE v. Office of Special Counsel*, 1 F.4th 180, 188 (4th Cir. 2021) ("It may seem odd that a controversy can simultaneously be both moot and unripe. But it is not odd at all.") JFA Plaintiffs' proposed Count V is focused on proposed rule 08 N.C.A.C. 22.0204 which was never approved by the State Board for submission to the Commission making it futile for numerous reasons. Ex. A, pp. 37-38. JFA Plaintiffs' other two proposed claims, Counts III and IV, are not yet ripe.

The Supreme Court in *Abbott Labs* established a two-pronged test for ripeness: (1) whether the issues are fit for judicial decision and (2) whether hardship will fall to the petitioning party on withholding court consideration. *Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208-09 (4th Cir. 1992) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977); *see also Wild Va.*, 56 F.4th at 294 (quoting *Deal v. Mercer Cnty. Bd. Of Educ.*, 911 F.3d 183, 191 (4th Cir. 2018); and *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733, 118 S. Ct. 1665, 140 L. Ed. 2d 921 (1998) (describing the considerations as "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented"). Under the first prong, a case is fit for judicial review if "the issues to be considered are purely legal

ones and where the agency rule or action giving rise to the controversy is final and not dependent upon future uncertainties or intervening agency rulings." *Id.* Under the second prong, hardship "is measured by the immediacy of the threat and the burden imposed on the petitioner who would be compelled to act under threat of enforcement of the challenged law." *Id.*

The two proposed claims also suffer from prudential concerns of ripeness such that they fail to state a claim under Rule 12(B)(6). "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction, but, even in a case raising only prudential concerns, the question of ripeness may be considered on a court's own motion." *Nat'l Park Hosp. Ass'n v. DOI*, 538 U.S. 803, 808 (2003) (internal quotations and citations omitted)). Regarding prudential ripeness, although the Supreme Court has questioned the doctrine, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167-68 (2014), the Fourth Circuit and the Supreme Court have continued to apply it. *Wild Va. v. Council on Env't Quality*, 56 F.4th 281, 294 n.5 (4th Cir. 2022) (citing *e.g.*, *AFGE*, 1 F.4th at 188; *Trump v. New York*, 592 U.S. 125, 132-34, 141 S. Ct. 530, 536-37 (2020)). As noted by the Fourth Circuit applying prudential ripeness in the administrative context where a party is seeking declaratory ruling, as is the case here, it cautioned:

> The particular role ripeness doctrine plays in the administrative context is, as the Supreme Court has said, "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect agencies from judicial interference until an administrative decision has been formalized …" More generally, observing the requirements of ripeness preserves courts from becoming embroiled in controversies not yet of a suitable form for judicial decision. For "[i]t would not accord with judicial responsibility to adjudge, in a matter involving constitutionality, between the freedom of the individual and the requirements of public order except when definite rights appear upon the one side and definite prejudicial interferences upon the other." It is with these ends in mind that we must consider ripeness' dual requirements, that is, "fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration."

*AFGE*, 1 F.4th at 188 (quoting *Abbott Labs*, 387 U.S. at 148-49; *United Pub. Workers v. Mitchell*, 330 U.S. 75, 90 (1947); and *Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983)). Although this appears to lend itself to "rigid formulas that can be applied with precision and definiteness," a primary consideration of ripeness asks "whether the claim for relief remains purely conjectural." *Hanover Ins. Co. v. C. David Venture Mgmt., LLC*, Civil Action No. 1:21-cv-790 (RDA/JFA), 2022 U.S. Dist. LEXIS 156834, at *8 (E.D. Va. Aug. 30, 2022) (quoting *Fourth Q. Props. IV, Inc. v. City of Concord, N.C.*, 127 F. App'x 648, 651 (4th Cir. 2005) (internal quotations and citation omitted). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300, 118 S. Ct. 1257, 140 L. Ed. 2d 406 (1998) (citations omitted).

This is precisely the posture of this case. Currently the original claims are moot and the entirely speculative future claims asserted by JFA Plaintiffs are not yet ripe because they rely on a multitude of events that have not yet occurred and may never occur. Because neither satisfy Article III jurisdiction or prudential considerations, the proposed amendments are futile for lacking subject matter jurisdiction, are insufficient and frivolous, and fail to state a claim upon which relief can be granted, such that the motion should be denied.[12]

## ARGUMENT

Here, JFA Plaintiffs proposed amendments are futile because this is nothing more than an attempt to rekindle a controversy where none exists. The decision at issue in this action, whether the State Board properly denied certification to JFA, is no longer a live issue. Faced with that

---

[12] Should this Court find that the motion to amend should be granted, State Board Defendants reserve the right to present all relevant defenses to the new claims in a motion to dismiss under Rule 12.

12

reality, JFA Plaintiffs seek to bring unripe claims prematurely by speculating about what might happen in the future as part of unrelated administrative processes. JFA Plaintiffs have not even alleged in the proposed Amended Complaint that they are or will be seeking to form a new political party through the petition process in North Carolina. [D.E. 90-1]. Such a blatant attempt to create entirely new claims where no controversy yet exists should be rejected by this Court. The allegedly unlawful rules are not yet in effect, and even if they were, there has been no application of the rules to any prospective political party, much less the JFA Plaintiffs. As a result, the preexisting underlying claims in this action remain moot and any potential claims JFA Plaintiffs think may arise in the future are entirely unrelated and purely speculative, such that they are unripe and fail to present a live controversy or to state a claim. This Court should reject this request for it to referee abstract disagreements over state administrative policies.

JFA Plaintiffs' primary argument in support of allowing this amendment boils down to another attempt to avoid mootness by alleging the same harm is likely to recur while evading review. [D.E. 90-1, ¶¶ 46-66; D.E. 91, pp. 6-8]. These same arguments were already put forward by JFA Plaintiffs in their response to the pending motion to dismiss for mootness. [D.E. 73, pp. 6-13]. Specifically, JFA Plaintiffs argued that a declaratory judgment remained necessary to prevent the State Board from taking similar action in the future. *Id.* Those arguments were addressed in the reply and are incorporated here by reference. [D.E. 74].

Additionally, in the *Green Party* action, relied upon so heavily by the JFA Plaintiffs, the one substantive legal ruling came from the preliminary injunction which found that it is unconstitutional to enforce the July 1 candidate filing deadline against a party that was not certified until after the candidate filing deadline. *See N.C. Green Party*, 619 F. Supp. 3d at 570. The *Green Party* case was later dismissed, but that did not stop the State Board from applying the legal ruling

from the preliminary injunction to waive the July 1 deadline to accept the candidates of the Constitution Party and the We The People Party when those parties were certified after the new party candidate filing deadline in the 2024 election cycle.[13] This history demonstrates that, contrary to JFA Plaintiffs speculative allegations of future harm, the State Board is routinely recognizing new parties and has modified its action to conform with this Court's rulings.

JFA Plaintiffs also fail to state a claim or present a live controversy because the allegations of future harm are entirely speculative. Not once in either the proposed Amendment Complaint or their brief in support do JFA Plaintiffs assert that JFA is seeking certification as a political party in North Carolina. [D.E. 90-1, 91]. Instead, JFA Plaintiffs seem to want to sue for potential future harms on behalf of other prospective parties yet to go through that process under Rules that have not been approved or put into effect. JFA Plaintiffs simply cannot demonstrate they have ripe claims when they are not even seeking to be certified as a political party in North Carolina. *See Wild Va.*, 56 F.4th at 293 (citing *Renne v. Geary*, 501 U.S. 312, 316 (1991) ("It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers.")).

Not only are the potential harms speculative as to JFA Plaintiffs in particular, but it is also speculative that any of the potential harms forecasted by the proposed Amended Complaint would occur to *any* new political party. The administrative rules that form the basis of these claims are entirely new rules that are not yet in effect. This set of rules was prepared and approved by the State Board in response to the questions raised and difficulties encountered by the State Board

---

[13] *See supra,* notes 8 and 9.

during the 2022 and 2024 new party certification processes.[14] The rules have not been approved by the N.C. Rules Review Commission and have not been entered into the Administrative Code. At this point, the final form of any rule that may be approved by the Commission is not known. In fact, one of the rules on which JFA Plaintiffs based their claims, 22-0204, was *not even adopted* by the State Board or submitted to the Commission. *See* Ex. A, pp. 37-38. With respect to the rules that were adopted, the State Board has not yet had the opportunity to implement these processes as part of a new party certification process. New prospective parties have not yet had the opportunity to demonstrate compliance with the requirements under the new rules or that compliance would present any harm or undue burden. And prejudging that process to assume it will result in the denial of party status is contradicted by recent State Board history.[15] As there is no reason beyond pure speculation to conclude that this process will in any way harm or violate the rights of JFA Plaintiffs or other groups actually seeking party status, these proposed claims are not ripe. *See Wild Va.*, 56 F.4th at 295 ("At bottom, the purpose of the ripeness doctrine is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." (internal quotations omitted)).

Because the newly raised claims in JFA Plaintiffs proposed Amended Complaint do not present viable claims or a live controversy, it requires the assumption of a sequence of events that have not occurred and may never occur. Even if JFA was seeking party recognition, which it is

---

[14] *See* N.C. State Board of Elections Website, Video of June 24, 2025 State Board Meeting, *available at* https://s3.amazonaws.com/dl.ncsbe.gov/State_Board_Meeting_Docs/2025-06-24/State%20Board%20of%20Elections%20Meeting-20250624.mp4 (last visited August 15, 2025), see timestamp 41:35-43:45, and the discussion that follows.

[15] *See supra,* Statement of Facts, pp. 6-7.

15

Case 5:24-cv-00420-BO-BM    Document 94    Filed 08/15/25    Page 15 of 17

not, there is no reason to believe its organizers or petition gatherers would be unable to present the documents required by these proposed new rules or that the State Board would not recognize JFA as a party. A new petition process would come with new organizers, new signature gatherers, new signers of petitions, and likely operate under new rules and processes to clarify and streamline that process. Most importantly, all of this would develop into a new factual record on which any challenge would have to proceed.

Finally, for JFA Plaintiffs' speculation to come to pass, the State Board would have to deny a prospective party based on the conclusory grounds that JFA Plaintiffs have claimed, by imposing some form of speech test which does not appear in the governing laws or the newly proposed Rules. As stated above, neither the underlying statute or the proposed rules challenged here seeking to implement that statute, contain any litmus test for the general purpose and intent of a political party. *See* N.C.G.S. § 163-96 and Ex. A, 08 N.C.A.C. 22.0305 and 22.0306, pp. 47, 49-50. The requirement is only that whatever the purpose and intent of the political party, it is conveyed to the people who signed the petitions. *Id.* Even if this process resulted in a denial by the State Board, that decision would be a new decision based on new facts from a new record applying new processes based on proposed rules that are not yet in effect. Simply put, JFA Plaintiffs have asserted threadbare allegations, without an existing live controversy, based on conclusory statements that the State Board will possibly violate their rights in the future. Under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), such allegations are insufficient to support a new cause of action nor do they cure the fatal flaws in the initial complaints.

16

Case 5:24-cv-00420-BO-BM    Document 94    Filed 08/15/25    Page 16 of 17

As none of this has occurred and may never occur, JFA Plaintiffs' proposed amendments are futile, this case remains moot, and it is respectfully requested that this Court deny this motion and dismiss the case.

## CONCLUSION

As the State Board has consistently argued since January, the only relevant question in this case was whether the State Board was correct or incorrect in its determination to deny JFA certification as a party in 2024. That question is moot and JFA Plaintiffs' speculative future harms cannot breathe new life into those dead claims by seeking an advisory opinion based on a series of events that has not yet occurred. This Court should therefore deny the motion to amend as futile and dismiss the present action.

Respectfully submitted this the 15th day of August, 2025.

NORTH CAROLINA
DEPARTMENT OF JUSTICE

/s/ Terence Steed
Terence Steed
Special Deputy Attorney General
N.C. State Bar No. 52809
E-mail: tsteed@ncdoj.gov
N.C. Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602-0629
Telephone: (919) 716-6567
Facsimile: (919) 716-6763

*Attorney for State Board Defendants*