IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-cv-00420-BO

| | |
|---|---|
| JOHNNY THOMAS ORTIZ II, *et al.*, <br><br>    Plaintiffs, <br><br>JUSTICE FOR ALL PARTY OF NORTH CAROLINA, *et al.*, <br><br>    Intervenor-Plaintiffs, <br><br>v. <br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS, *et al.*, <br><br>    Defendants. | **INTERVENOR-PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** <br> Fed. R. of Civ. P. 15(a) |

Twice in the last two election cycles, this Court has entered injunctions requiring the Board to place a new political party's candidates on North Carolina's ballot because the Board failed to timely certify the party, *see N.C. Green Party v. N.C. State Bd. of Elections*, 619 F. Supp. 3d 547, 552 (E.D.N.C. 2022), or because the Board declined to certify the party at all, *see Ortiz v. North Carolina State Board of Elections*, No. 5:24-CV-00420-BO, 2024 WL 3764561 (E.D.N.C. Aug. 12, 2024) [DE 55], even though in each case it was undisputed that the parties had fully and timely complied with North Carolina law. The Board responded by doubling down. Rather than taking action to correct its constitutional violations, the Board promulgated new rules which, inter alia, purport to authorize the very conduct this Court has twice enjoined.

The Board now seeks to evade review of that unconstitutional conduct by arguing that the claims asserted in JFA's original Complaint are moot, while the claims asserted in JFA's proposed

First Amended Complaint are not yet ripe. (Resp. in Opp. to Int.-Pls. Mot. to Amend [D.E. 94] ("Opposition or Opp.") at 3.) In the Board's view, the magic moment when JFA may finally litigate its claims to a final judgment will never come. The Board is wrong.

As JFA has previously explained, the claims asserted in its original Complaint are not moot because JFA challenges unconstitutional conduct that is capable of repetition yet evading review. (Int.-Pls. Resp. in Opp. to State Bd. Defs.' Mot. to Dismiss at 8-13 [D.E. 73] ("Opp. to Mot. to Dismiss").) Indeed, the Board's unconstitutional conduct has already evaded review. *See N.C. Green Party v. N.C. State Bd. of Elections*, No. 5:22-cv-276 (E.D. N.C. Aug. 7, 2023) (unpublished order) (dismissing Green Party's claims as moot after granting preliminary injunction placing its candidates on 2022 general election ballot). The Board's unconstitutional conduct has also already repeated—in this very case. *See Ortiz*, No. 5:24-CV-00420-BO, 2024 WL 3764561 (granting JFA preliminary injunction directing the Board to certify JFA and place its candidates on 2024 general election ballot). Under these circumstances, Supreme Court and Fourth Circuit precedent make clear that JFA's claims challenging such conduct are not moot, (Opp. to Mot. to Dismiss at 9-13), and JFA is entitled to a final judgment on the merits of its claim for declaratory relief. (*Id.* at 6-8.)

The claims asserted in JFA's proposed First Amended Complaint are also ripe. The Board contends they are not because "[t]he rules proposed by the State Board remain before the [North Carolina Rules Review] Commission, have not been approved by the Commission, and are not yet in effect." (Opp. at 3.) As the Board acknowledges, however, the Commission was scheduled to consider the rules at its August 28, 2025 meeting, (Opp. at 4), and the Commission approved Rule 22.0305 (General Purpose and Intent of the New Party) and Rule 22.0306 (Sufficiency of New Party Petitions) at that meeting.[1]

---

[1] The text of the final rules is available at https://www.oah.nc.gov/elections-final-revised-rules-0/open (accessed August 28, 2025) and attached hereto as Exhibit A. Rule 22.0305 was "adopted as published in 39:18 NCR 1212-

2

Case 5:24-cv-00420-BO-BM    Document 95    Filed 08/29/25    Page 2 of 9

Under North Carolina law, agency rules take effect on the first day of the month following the month the Commission approves the rule—or on September 1, 2025, as applied here—unless the Commission receives at least 10 written objections that request legislative review of the rule by 5:00 P.M. on the day after the rule is approved. *See* N.C.G.S. §§ 150B-21.3(b), -21.3(b2). In that case, the rule is subject to a delayed effective date. *See* N.C.G.S. § 150B-21.3(b1). As of 10:37 A.M. on the date of this filing, August 29, 2025, the Commission received enough objections to trigger the delayed effective date for Rule 22.0305, *see* Rules Review Commission, Agenda, Thursday August 28, 2025, Part V.1 ("Letters requesting legislative review), *available at* https://www.oah.nc.gov/news/events/rrc-meeting-agenda-august-2025 (accessed August 29, 2025), but that delay is of limited consequence. Rule 22.0305 merely codifies and expands upon the "purpose and intent" requirement set forth in N.C.G.S. § 163-96(b), and JFA challenges that statutory requirement separately, in addition to challenging it in combination with the Board's new rules. (First Am. Compl. [D.E. 90-2] ¶¶ 73-75.) JFA's challenge to § 163-96(b) is therefore ripe now, even if Rule 22.0305 is not yet final. Furthermore, because fewer than 10 objections were timely filed to Rule 22.0306, it remains scheduled to take effect on September 1, 2025, and JFA's claims against that rule are also ripe. (First Am. Compl. ¶¶ 69-83.)

According to the Board, JFA's claims are nonetheless "futile as they rely on a harm that might take place if JFA decides to undertake a new attempt to seek party certification," (Opp. at 3), but that is incorrect as a matter of fact and as a matter of law. When the Board declined to certify JFA as a political party in 2024, JFA's alleged failure to comply with § 163-96(b)'s purpose and intent requirement was the primary if not exclusive basis Board members cited for that

---

1213," and Rule 22.0306 was "adopted <u>with changes</u> [reflected in Ex. A] as published in 39:18 NCR 1213. JFA is gratified to learn the Board apparently declined to pursue adoption of Rule 22.0204. (Opp. at 6.)

3

decision. (First Am. Compl. ¶¶ 47-66.) That is a concrete injury JFA actually suffered—not a "speculative future harm" as the Board incorrectly asserts. (Opp. at 3.)

More important, as explained below, the Board's assertion that JFA's claims are not ripe has been squarely rejected by the Supreme Court, the Fourth Circuit and other Circuits, which repeatedly recognize that "[m]uch like standing, ripeness requirements are also relaxed in First Amendment cases." *Cooksey v. Futrell*, 721 F.3d 226, 240 (4th Cir. 2013) (citing *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1500 (10th Cir. 1995)); *see also Peachlum v. City of York*, 333 F.3d 429, 438 (3rd Cir. 2003). "The principle that one does not have to await the consummation of threatened injury to obtain preventive relief … is particularly true in the election context, where we [the Supreme Court] often have allowed preenforcement challenges to restrictions on speech." *Gonzales*, 64 F.3d at 1501 (brackets, quotation marks and citations omitted). Here, JFA has already been harmed by the Board's enforcement of § 163-96(b)'s purpose and intent requirement and the unconstitutional conduct the Board purports to authorize through Rule 22.0305 and Rule 22.0306. JFA and all other new parties face the threat of incurring such injury again. Rather than being forced to pursue yet another emergency action "brought on the eve of [a] pending governmental election[]," when it may be too late to remedy the Board's violations, JFA is entitled to seek prospective relief now. *Miller v. Brown*, 463 F.3d 312, 320 (4th Cir. 2006).

## ARGUMENT

The issues before the Court are not nearly as complicated as the Board tries to make them seem. As the Fourth Circuit has explained, to determine whether JFA's claims are ripe, this Court must:

> balance the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration. A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties. The hardship prong is measured by the immediacy of the threat and the

4

burden imposed on the [plaintiffs] who would be compelled to act under threat of enforcement of the challenged law. When considering hardship, we may consider the cost to the parties of delaying judicial review.

*Miller*, 462 F.3d at 319 (quotation marks and citations omitted).

Here, the Board does not and cannot deny that it has unconstitutionally denied ballot access to two qualified political parties in two successive elections, or that it has thus far evaded judicial review, necessitating repeated emergency actions by new parties including JFA. Rather than taking corrective action, however, the Board has promulgated new rules purporting to authorize its unconstitutional conduct in future elections. The Board nonetheless insists that this controversy "is no longer a live issue" because JFA has not alleged that it "will be seeking to form a new political party through the petition process in North Carolina" and "there has been no application of the rules to any prospective political party, much less [JFA]." (Opp. at 12-13.) According to the Board, this makes JFA's claims too "speculative" to be ripe. (Opp. at 14.) Once again, the Board is wrong on the facts and the law.

Plaintiff Italo Medelius, JFA's Chair, expressly alleges that he "seeks to campaign for, speak and associate with, and vote for JFA's candidates" not only in 2024 but also in "future elections." (First. Am. Compl. ¶ 3.) Plaintiff Medelius also alleges that he is "trying to start a political party," and that he is "contemplating a statewide ongoing political organization with distinctive character." (*Id.* at ¶¶ 54-55.) Indeed, that has been JFA's plan "since day one." (*Id.* at ¶ 55.) JFA need not specifically allege that it is currently conducting another petition drive to satisfy the "relaxed" ripeness standard that applies to its First Amendment claims. *See Cooksey*, 721 F.3d at 240. In *Miller*, for example, the Fourth Circuit rejected "the Board's position that the courts should not decide the case until another candidate files for office." *Miller*, 462 F.3d at 320. Similarly, in *Gonzales*, the Court rejected the assertion that the candidate-plaintiff's First

5

Amendment claim would not be ripe "until and unless he announces his candidacy for state office." *Gonzales*, 64 F.3d at 1501. Here, too, JFA's claims are ripe even if JFA has not yet begun another petition drive.

JFA also need not allege that the Board's rules have been enforced against it or any other party to ripen its claims challenging those rules. On the contrary, it is well-settled that "one does not have to await the consummation of threatened injury to obtain preventive relief," and this principle "is particularly true in the election context." *Id.* (brackets and citations omitted). That is because "[t]hough waiting until [plaintiffs] invoke unsuccessfully the statutory election procedures would remove any doubt about the existence of concrete injury resulting from application of the election provision, little could be done to remedy the injury incurred in the particular election." *Babbit v. Farm Workers*, 442 U.S. 489, 300 n.12 (1979).

> As the Fourth Circuit has explained, quoting the Supreme Court:
>
> Challengers to election procedures often have been left without a remedy in regard to the most immediate election because the election is too far underway or actually consummated prior to judgment. Justiciability in such cases depends not so much on the fact of past injury but on the prospect of its occurrence in an impending or future election. There is value in adjudicating election challenges notwithstanding the lapse of a particular election because [the] construction of the statute, an understanding of its operation, and possible constitutional limits on its application, will have the effect of simplifying future challenges, thus increasing the likelihood that timely filed cases can be adjudicated before an election is held.

*Miller*, 462 F.3d at 320 (quoting *Babbit*, 442 U.S. at 301 n.12 (citations omitted)). This rationale applies with equal force here. JFA's claims are justiciable not so much because of its past injury—though that is sufficient—but also because the prospect of that injury's occurrence in a future election is manifest. The Board unconstitutionally denied ballot access to two parties in the last two elections—one being JFA—and even though this Court entered preliminary injunctions granting the parties relief in both cases, the Board has promulgated new rules purporting to

6

authorize it to do the same in future elections. The Board's assertion that JFA's claims challenging such conduct are not ripe is insupportable. *See id.*

The Board attempts to rebut this conclusion by noting that it does not always unconstitutionally bar qualified parties from the ballot, (Opp. at 13-14), but that is immaterial. The Board did it to JFA in 2024 and the Board did it to the Green Party in 2022. Those facts alone are more than sufficient to establish the ripeness of JFA's claims challenging that conduct. *Miller*, 462 F.3d at 320 (quoting *Babbit*, 442 U.S. at 301 n.12).

As previously noted, the Board's assertion that "the final form of any rule that may be approved by the Commission is not known" is incorrect. (Opp. at 15.) The Commission approved Rule 22.0305 and Rule 22.0306 at its August 28, 2025 meeting. The final form of both rules as approved by the Commission is known. *See* Ex. A. Even if Rule 22.0305 is subject to a delayed effective date pursuant to N.C.G.S. § 150B-21.3(b)(2), JFA challenges the purpose and intent requirement set forth in § 163-96(b), separate and independent of that rule, and that claim is undoubtedly ripe. Further, that claim does not require "the assumption of a sequence of events" nor the development of "a new factual record on which any challenge would have to proceed," as the Board incorrectly asserts. (Opp. at 15-16.) The facts supporting JFA's claim that the purpose and intent requirement operates as a content-based prior restraint which vests the Board with unbounded discretion to deny certification to new parties are in the record of this case. (First Am. Compl. ¶¶ 47-66, 69-75); *see Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130 (1992); *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973).

Finally, the Board's attempt to defend the purpose and intent requirement on the merits is premature. (Opp. at 16.) Whether that requirement withstands First Amendment scrutiny facially, or as applied, is not at issue here. The only issue is whether JFA has properly stated a non-frivolous

7

claim challenging that requirement. Even the Board does not dispute that JFA satisfies that standard. Similarly, the Board does not dispute that JFA has stated a well-pleaded claim challenging Rule 22.0306 in its final form as approved by the Commission. JFA's request for leave to amend its pleading therefore should be granted, and JFA should be permitted to file its First Amended Complaint.

## CONCLUSION

For the foregoing reasons, Intervenor-Plaintiffs' Motion for Leave to File First Amended Complaint should be granted.


Dated: August 29, 2025                        Respectfully submitted,

/s/Oliver B. Hall
Oliver B. Hall
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, D.C. 20009
202-248-9294
oliverhall@competitivedemocracy.org
D.C. Bar No. 976463
Attorney for Intervenor-Plaintiffs

Christopher R. Lusby
Lusby Law PA
2860-A Ward Blvd
Wilson, NC 27893
252-221-3223
www.lusbylaw.com
State Bar No: 52274
Local Civil Rule 83.1(d) Attorney for Intervenor-Plaintiffs

## CERTIFICATE OF SERVICE

      I hereby certify that on August 29, 2025, the foregoing document was filed using the Court's CM/ECF system, which will effect service upon all counsel of record.

      /s/Oliver B. Hall
      Oliver B. Hall