| | |
|---|---|
| JOHNNY THOMAS ORTIZ, II, et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| and | )<br>) |
| CORNELL WEST, et al., | )<br>)     O R D E R |
| Intervenor-Plaintiffs, | )<br>)<br>) |
| v. | )<br>)<br>) |
| NORTH CAROLINA STATE BOARD OF ELECTIONS, et al., | )<br>)<br>)<br>) |
| Defendants. | ) |

This matter comes before the Court on defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction [DE 66], plaintiffs' motion for summary judgment [DE 81], and intervenor-plaintiffs' motion for leave to file an amended complaint [DE 90]. Intervenor-plaintiffs responded in opposition [DE 73] to defendants' motion to dismiss, and defendants replied [DE 74]. Defendants responded [DE 89] to plaintiff's motion for summary judgment, and plaintiff replied [DE 93]. Defendants responded to intervenor-plaintiffs' motion for leave to amend the complaint [DE 94], and intervenor-plaintiffs replied [DE 95]. The Court also considers defendants' motion to stay [DE 85] and a consent motion to expedite decision on that motion to stay [DE 86]. A hearing was held before the undersigned in Elizabeth City on November 10, 2025. In this posture, the motions are ripe for ruling. For the following reasons, defendants' motion to dismiss and intervenor-plaintiffs' motion for leave to amend the complaint are denied, and plaintiff's motion for summary judgment is granted.

## BACKGROUND

Plaintiffs are voters who signed a petition asking the North Carolina State Board of Elections to certify the "Justice for All Party" (JFA) as a political party in North Carolina, which would give JFA access to North Carolina's November 2024 general election ballot. JFA submitted more than the requisite number of signatures under N.C. Gen. Stat. §§ 163-96 and 163-98 to be certified. Nevertheless, the Board of Elections declined to certify the party. Plaintiffs filed this lawsuit against the Board of Elections and its members, seeking a preliminary injunction compelling the Board of Elections to certify JFA as a political party. JFA itself, along with its nominee for president and its party chair, intervened as plaintiffs, asserting the same claims and seeking the same relief. On August 12, 2024, The Court granted the motion in part and enjoined defendants. As ordered, the Board certified JFA as a political party on August 20, 2024, and JFA's chosen eligible candidates appeared on North Carolina's November 2024 general election ballot.

For JFA to maintain its status as a certified political party, its presidential candidate was required to receive at least two percent of the votes cast for that office in the November 2024 election. *See* N.C.G.S. §§ 163-96(a)(1), 163-97. JFA's presidential candidate received less than the requisite number of votes, so JFA is no longer a certified political party in North Carolina. Defendants moved to dismiss this case as moot [DE 66].

Plaintiffs moved for summary judgment [DE 81], seeking a declaratory judgment that defendants' application of the political party statutes in declining to certify to JFA was unconstitutional. In opposition, defendants reassert their position that the case is moot, because the 2024 election has come and gone.

After the 2024 election, the Board proposed new rules applicable to political parties seeking to qualify for the ballot. Intervenor-plaintiffs seek leave to amend their complaint so that
2

they can challenge these new rules, as well as N.C.G.S. § 163-96(b). Section 163-96(b) describes the form of petitions for creation of new political parties, and mandates that "the organizers and petition circulators shall inform the signers of the general purpose and intent of the new party."

The North Carolina Rules Review Commission approved Rule 22.0305, which codifies and expands on the "purpose and intent" provision of N.C.G.S. § 163-96(b). Rule 22.0305 requires a party seeking certification to "submit written documentation to the State Board demonstrating how the petition circulators will inform a petition signer of the prospective party's general purpose and intent when collecting signatures." [DE 95-1, p. 31]. It further provides that county boards of election "shall not conduct signature verification of the prospective party's signature sheets until the documentation required under this Rule has been submitted to the State Board." *Id.* The Rules Review Commission also approved Rule 22.0306, which sets forth factors the Board will consider when determining the sufficiency of a new party petition. *Id.* at 32–33.

LEGAL STANDARDS

**I. Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a claim for lack of subject matter jurisdiction. "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) (citation omitted). When subject-matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction to survive the motion. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647–50 (4th Cir. 1999). The Court can consider evidence outside the pleadings without converting the motion into one for summary judgment. *See, e.g., Evans*, 166 F.3d at 647.

## II. Summary Judgment

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotation marks and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

## III. Motion for Leave to Amend

A party is entitled to amend its complaint once as a matter of course in the early stages of pleading. *See* Fed. R. Civ. P. 15(a)(1). Once the time for doing so has elapsed, however, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision to

4

grant or deny a motion to amend is within the discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

"[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). A proposed amendment is futile when it is "clearly insufficient or frivolous on its face" or if it "fails to withstand Rule 12(b)(6) scrutiny." *In re Triangle Capital Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021). Similarly, "challenges to subject-matter jurisdiction may be raised by the defendant 'at any point in the litigation,' and courts must consider them *sua sponte*." *Fort Bend Cty. v. Davis*, 587 U.S. 541, 548 (2019). It follows that a proposed amended complaint is insufficient on its face when it asserts claims that are not ripe.

## DISCUSSION

### I. Defendants' Motion to Dismiss the Case as Moot

Article III of the United States Constitution limits federal court jurisdiction to actual cases and controversies and requires that a dispute remain live. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395–96 (1980). "The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Id.* at 397 (quotation and citation omitted). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). A federal court lacks subject matter jurisdiction to decide a case which is moot due to Article III's case or controversy requirement. *Com. of Va. ex rel. Coleman v. Califano*, 631 F.2d 324, 326 (4th Cir. 1980).

5

"A case that would otherwise be moot is not so if the underlying dispute is 'capable of repetition, yet evading review.'" *Stop Reckless Econ. Instability Caused by Democrats v. Fed. Election Comm'n*, 814 F.3d 221, 229 (4th Cir. 2016). This exception to mootness doctrine applies when "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Lux v. Judd*, 651 F.3d 396, 401 (4th Cir. 2011) (quoting *Fed. Election Comm'n v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 462 (2007)).

The Court is persuaded that the Board of Elections' unconstitutional application of the political party statutes fits these criteria. Regarding element (1), the election was over before this case matured. As for element (2), this very case is a repetition of the unconstitutional conduct at issue in *North Carolina Green Party v. North Carolina State Bd. of Elections*, 619 F. Supp. 3d 547, 555 (E.D.N.C. 2022). Because this case falls in the mootness exception for wrongs capable of repetition but evading review, the plaintiffs' case is "live," and the Court retains jurisdiction. The motion to dismiss is denied.

## II. Plaintiffs' Motion for Summary Judgment and Request for Declaratory Judgment

The constitutionality of a ballot-access law is assessed under two-step analytical framework set forth in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and refined in *Burdick v. Takushi*, 504 U.S. 428 (1992). Under the *Anderson-Burdick* framework, courts

> must weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendment that the plaintiff seeks to vindicate against the precise interest put forward by the State as justification for the burden imposed by its rule, taking into consideration the extent to which those interest make it necessary to burden the plaintiff's rights.

*Burdick*, 504 U.S. at 434 (quotation marks omitted).

The first step under the *Anderson-Burdick* framework is to decide if the law—whether challenged on its face or as-applied—imposes a severe burden on First Amendment rights. If it does, it is subject to strict scrutiny and can be upheld only if narrowly drawn to support a compelling state interest. [DE 55, pp. 21–22]. At the second step, the Court must weigh the severe burden on plaintiffs' rights against the state interest which purports to justify the challenged rule or its application. *Id.* at 22–23.

As the Court indicated in its order of August 12, 2024, the Board's application of § 163-98 imposed a severe burden on plaintiffs' rights and was not narrowly tailored to protect the claimed government interests. [DE 55]. Because defendants do not seek to relitigate that issue in opposing summary judgment, relying only on their argument that the case is moot and disputing no facts, the Court finds that summary judgment is appropriate in plaintiffs' favor. Accordingly, plaintiffs are entitled to a judgment declaring that the Board of Elections' application of the political party statutes and failure to certify JFA as a political party was unconstitutional.

### III. Intervenor-Plaintiffs' Motion for Leave to Amend their Complaint

Intervenor-plaintiffs have proposed an amended complaint, which they seek leave to file, asserting new claims that challenge the new rules adopted by the Board *after* the 2024 election. Defendants respond in opposition, arguing that these new claims are not ripe.

The Supreme Court has established a two-pronged test for ripeness: "(1) whether the issues are fit for judicial decision and (2) whether hardship will fall to the petitioning party on withholding court consideration." *Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208–09 (4th Cir. 1992) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), abrogated on other grounds by *Califano v. Sanders*, 430 U.S. 99 (1977)). Under the first prong, a case is fit for judicial review if "the issues to be considered are purely legal ones and where the agency rule or action

7

giving rise to the controversy is final and not dependent upon future uncertainties or intervening agency rulings." *Id.* Under the second prong, hardship "is measured by the immediacy of the threat and the burden imposed on the petitioner who would be compelled to act under threat of enforcement of the challenged law." *Id.* "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300, 118 S. Ct. 1257, 140 L. Ed. 2d 406 (1998) (internal citations omitted).

Intervenor-plaintiffs note that "like standing, ripeness requirements are also relaxed in First Amendment cases." *Cooksey v. Futrell*, 721 F.3d 226, 240 (4th Cir. 2013) (citing *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1500 (10th Cir. 1995)). "The principle that one does not have to await the consummation of threatened injury to obtain preventive relief ... is particularly true in the election context, where we [the Supreme Court] often have allowed preenforcement challenges to restrictions on speech." *Gonzales*, 64 F.3d at 1501 (cleaned up).

> Challengers to election procedures often have been left without a remedy in regard to the most immediate election because the election is too far underway or actually consummated prior to judgment. Justiciability in such cases depends not so much on the fact of past injury but on the prospect of its occurrence in an impending or future election. There is value in adjudicating election challenges notwithstanding the lapse of a particular election because "[the] construction of the statute, an understanding of its operation, and possible constitutional limits on its application, will have the effect of simplifying future challenges, thus increasing the likelihood that timely filed cases can be adjudicated before an election is held."

*Miller v. Brown*, 462 F.3d 312, 320 (4th Cir. 2006) (citing *Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 301 n. 12).

The Court has already addressed this concern, which justifies the relaxed ripeness standards on which plaintiffs rely, by finding the case is not moot and granting plaintiffs a declaratory judgment. Given that intervenor-plaintiffs' concerns arise not from "the fact of past injury but on

the prospect of its occurrence in an impending or future election," the Court's declaration "will have the effect of simplifying future challenges." *See id.*

Furthermore, while the parties rely on the Board's past conduct to evidence its likelihood of wrongfully denying political party certification in the future, the Board's past conduct is not so telling. The partisan makeup of the Board of Elections changed in 2025 after legislative restructuring. Any speculation as to what the Board will do, and whether or how it will enforce the "purpose and intent" requirement and the new rules, is just that—speculation. While the issues intervenors raise are purely legal, the challenged rules are subject to the Board's uncertain application—the new Board could rescind the rules, for all the parties know—and there is no imminent threat to movants. The claims asserted in intervenor-plaintiffs' proposed amended complaint are unripe, and its motion for leave to amend the complaint is therefore denied.

## IV. Other Pending Motions

The Court denies defendant's motion to stay a response to plaintiff's motion for summary judgment [DE 85] and the motion to expedite decision on that motion [DE 86] as moot.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss [DE 66] is DENIED, plaintiffs' motion for summary judgment [DE 81] is GRANTED, and intervenor-plaintiffs' motion to for leave to amend their complaint [DE 90] is DENIED. The motion to stay a response to plaintiff's motion for summary judgment [DE 85] and motion to expedite decision on the motion to stay [DE 86] are DENIED as MOOT.

Plaintiffs are entitled to a declaratory judgment. The Court ADJUDGES AND DECLARES that the North Carolina State Board of Elections' 2024 denial of certification to the Justice for All Party was an unconstitutional application of N.C.G.S. § 163-96.

The Clerk is DIRECTED to close the case.

SO ORDERED, this 23 day of January 2026.

                                            TERRENCE W. BOYLE
                                            UNITED STATES DISTRICT JUDGE

10

Case 5:24-cv-00420-BO-BM     Document 101     Filed 01/23/26     Page 10 of 10